269 N.J. Super. 439 (1994)
635 A.2d 992
THE SUMMIT TRUST COMPANY, PLAINTIFF-RESPONDENT,
v.
WILLOW BUSINESS PARK, L.P., JOHN J. GARIBALDI, JEFFREY J. GARIBALDI, JOSEPH J. GARIBALDI, JAMES J. GARIBALDI AND WILLIAM T. KITLEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 29, 1993.
Decided January 4, 1994.
*441 Before Judges PETRELLA, BAIME and CONLEY.
James A. Scarpone argued the cause for appellants (Hellring, Lindeman, Goldstein & Siegal, attorneys; Mr. Scarpone and Peter H. Stoma, on the brief).
Robert Novack argued the cause for respondent (Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, attorneys; Mr. Novack and Mary L. Moore, on the brief).
The opinion of the court was delivered by CONLEY, J.A.D.
Defendants appeal summary judgment awarded plaintiff bank on a note and personal guaranties. In addition to the personal guaranties securing the note indebtedness, the bank obtained from defendant William Business Park, the borrower, a mortgage on undeveloped commercial real estate financed by the loan. When the borrower defaulted on the note, the bank elected to file a complaint in the Law Division against the borrower and the guarantors on the note and guaranties. In their answer, defendants asserted the bank should "be compelled to first foreclose its lien on the real estate ... and that the defendant guarantors be given a credit equal to the fair market value of the collateral." Defendants continue to contend on appeal that they are entitled to the "equitable right to foreclose first and a fair value credit." We disagree and affirm summary judgment.
*442 In its November 1988 commitment letter, the bank agreed to loan $5,000,000 to GRC Development Corporation to purchase 109.5 acres of real estate in Freehold Township to be developed as an industrial park. Repayment of the loan would be secured by a first mortgage lien on the property and by joint and several, unconditional guaranties by the individual defendants. The commitment specifically stated that it was issued in reliance upon the "Borrower's financial standing and that of its principals and guarantors, as set forth in the financial statements and other information which the Borrower submitted" as well as in reliance on the value of the real estate. The commitment was accepted on November 15, 1988 by the borrower and by the defendants in their corporate capacities and separately in their personal capacity. The borrower was changed from GRC Development Corp. to Willow Business Park, L.P., the general partners of which are the individual defendants.
On December 16, 1988, defendant Kitley as general partner, executed a one-year note in the amount of $5,000,000, evidencing that indebtedness to plaintiff. At the same time the bank was given a mortgage on the Freehold property as security for the loan. Paragraph 9 of mortgage specifically states:
REMEDIES CUMULATIVE. All of the Bank's remedies hereunder are distinct and cumulative and may be exercised concurrently, independently, or successively. If any indebtedness secured hereby is now or hereafter secured by any other collateral, the Bank may, at its option, exhaust all or any part of such collateral and the security hereunder, either concurrently or independently, and in such order as it may determine.
Paragraph 9 of the mortgage further specified that the bank could, among other things, "without notice or consent, and without affecting any of its rights or the liability of the Borrower or any guarantor ... (b) [e]xercise or refrain from exercising or waive any right the Bank may have ... and (d) [e]xercise or otherwise deal with any property ... securing such indebtedness."
Finally, each individual guarantor signed a guaranty requesting the bank to extend credit to Willow Business Park and "[i]n *443 consideration of any such credit given, each guarantor jointly and severally":
hereby absolutely and unconditionally guarantees [sic] prompt payment when due (and at all times thereafter) of any and all existing and future indebtedness and liability of any kind of the Borrower to the Bank, including, without limitation, interest, charges and other fees, and attorneys' fees and other costs of collection, if applicable, and further including all renewals, extensions and modifications of any such indebtedness or liability, however and whenever created, arising, evidenced, or acquired (all of such indebtedness or liability hereafter referred to as the "Indebtedness"). The Guarantor waives notice of the acceptance of this guaranty, notice of any and all of the Indebtedness, and presentment, protest, notice, demand or action on delinquency with respect to any Indebtedness, including any right to require the Bank to sue or otherwise enforce payment thereof.

This guaranty is made and shall continue as to any and all Indebtedness now existing or hereafter arising, without regard to the existence of other collateral, security, guaranties, or obligors, if any. The Bank may, from time to time, without notice to or consent of the Guarantor, sell, release, surrender, exchange, settle, compromise, waive, subordinate or modify, on any terms, any collateral, security, guarantees or conditions, without in any manner affecting or impairing the liability of the Guarantor. The Guarantor's liability hereunder is several and is independent of any other guaranties at any time in effect with respect to all or any part of the Indebtedness, and the Guarantor's liability hereunder may be enforced regardless of the existence of any such other guaranties.

[Emphasis added].
Consistent with the underlying note and mortgage documents, defendants' guaranties were unequivocal, unconditional and expressly recognized the bank's right to proceed on the guaranties in the event of a default without recourse to any other collateral or security. Defendants, then, proceeded with the deal, received through their partnership entity the loan monies and acquired the property with full understanding that in the event of default, the bank could seek the payment of the debt from the individual guarantors and Willow Business on its note prior to or in lieu of foreclosure on the property.
Thereafter, Summit and Willow Park modified the note and mortgage by extending the maturity date of the debt by modification agreements dated December 15, 1989, February 15, 1990 and November 30, 1990. Repayment was eventually extended to April 15, 1992 under the terms of the November modification agreement. *444 That agreement explicitly recognized the continuing validity of the underlying note, mortgage, and guaranties. Each of these documents was incorporated by reference in paragraph five of the November 1990 modification which states:
Subject only to the provisions of this Agreement, the terms of the Note, Mortgage, Guaranty and Prior Modification Agreements are hereby ratified, confirmed and approved and incorporated herein. . ..
Further, that modification agreement states that each guarantor "represents and warrants that there are no claims, setoffs, or defenses to the Bank's exercise of any rights or remedies available to the Bank under the terms of the Note, Mortgage, Guaranty and Prior Modification Agreements, or any other document executed in connection with this loan." Although defendant Kitley, who at the time of the November 1990 modification was no longer a general partner in Willow Business, did not sign the agreement, there is no evidence, either oral or in writing, of a release by the bank of Kitley's obligations under his original December 16, 1988 guaranty.
Defendants contend on appeal that the trial judge erred in granting summary judgment against Kitley and erred in rejecting their claim that the bank should first foreclose on the property before suing on the note and guaranties or, alternatively, that they should be permitted to assert a fair market value credit in the note and guaranty proceeding. Defendants' contention as to the summary judgment against Kitley is clearly without merit. R. 2:11-3(e)(1)(A),(E). Whether or not Kitley signed the last or any of the modification agreements, the fact is he remains a guarantor under his December 16, 1988 agreement from which he was never released by the bank. The fact that his signature was not requested for the November 1990 modification shows no more than that he was not then a general partner.
We are equally convinced defendants' foreclosure and fair market value contentions are also without merit. We address them in more detail, however, and begin with the basic premise that, with few exceptions, a continuing, absolute and unconditional guaranty of a note such as the guaranty involved here may be *445 enforced directly against the guarantor without prior recourse to foreclosure on the collateral or even against the principal debtor. Delaware Truck Sales, Inc. v. Wilson, 131 N.J. 20, 32, 618 A.2d 303 (1993); Lenape State Bank v. Winslow Corp., 216 N.J. Super. 115, 126, 130, 523 A.2d 223 (App.Div. 1987). This is precisely what the individual guaranties expressly acknowledge, as does the mortgage by expressly providing that the bank's remedies under the mortgage are cumulative, including the right to "refrain from exercising" any rights it has under the mortgage or "release or otherwise deal with" the mortgaged property.
One of the limitations imposed upon a creditor's rights in pursuing satisfaction from various sources of security or collateral arises where the debt is secured, among other things, by a mortgage on real property. This limitation is statutory and is set forth in N.J.S.A. 2A:50-2. That statute provides in part:
Except as otherwise provided, all proceedings to collect any debt secured by a mortgage on real property, shall be as follows:
First, a foreclosure of the mortgage; and
Second, an action on the bond or note for any deficiency, if, at the sale in the foreclosure proceeding, the mortgaged premises do not bring an amount sufficient to satisfy the debt, interest and costs.
....
No action shall be instituted against any person answerable on the bond or note unless he has been made a party in the action to foreclose the mortgage.
Where the creditor is obligated to first pursue a foreclosure action to satisfy its debt and in the event of a deficiency, N.J.S.A. 2A:50-3 provides for what is commonly referred to as the "fair market value" credit. That statute provides:
The obligor in any bond or note specified in section 2A:50-2 ... may file an answer in the action for deficiency, disputing the amount of the deficiency sued for. In that event both parties may introduce evidence as to the fair market value of the mortgaged premises at the time of the sale thereof in the foreclosure action, and the court, with or without a jury, shall determine the amount of such deficiency, by deducting from the debt secured the amount determined as the fair market value of the premises.
These statutory protections, however, apply only to certain mortgaged property and are expressly not applicable to:

*446 proceedings to collect a debt evidenced by a note and secured by a mortgage on real property in the following instances:
a. Where the debt secured is for a business or commercial purpose other than a two-family, three-family or four-family residence in which the owner or his immediate family resides;
b. Where the mortgaged property is other than a one-family, two-family, three-family or four-family dwelling in which the owner or his immediate family resides at the time of institution of proceedings to collect the debt; ....
c. Where a banking institution, savings and loan associations or building and loan association, operating pursuant to State or Federal law, is the lender ... and the mortgage is not the primary security for the debt, as evidenced by (1) the financial condition of one or more persons directly or indirectly liable on the note, or (2) the giving of collateral in addition to the mortgage as security for the debt; ....

[N.J.S.A. 2A:50-2.3].
Thus, where mortgage loans involve the financing of business or commercial properties, the lenders are not required to foreclose on the mortgage before seeking entry of judgment on the notes or on a guaranty. Schwartz v. Bender Investments, Inc., 58 N.J. 444, 449, 279 A.2d 100 (1971) ("there is nothing in the case before us to warrant a departure here from the presently accepted rule that suit may first be brought upon a note without preliminary foreclosure of the mortgage. This is not the case of an unwitting homeowner who improvidently signs a note.... The loan here was of a commercial nature and the mortgage is a lien ... on commercial properties...."); Lenape State Bank v. Winslow Corp., 216 N.J. Super. at 132, 523 A.2d 223 ("[b]ecause [the debtor/guarantor's] claims [to the protections of N.J.S.A 2A:50-2, 3] flow from a commercial transaction, the protections afforded note holders under the [statute] are not applicable...."); Central Penn National Bank v. Stonebridge Ltd., 185 N.J. Super. 289, 305, 448 A.2d 498 (Ch.Div. 1982). See also Citizens United Bank N.A. v. Pearlstein, 733 F.2d 28, 30 (3rd Cir.1984). Cf. 10 George W. Thompson, Commentaries on the Modern Law of Real Property, § 5128 (1954) (holder of personal note and mortgage not required to first foreclose the mortgage, but may bring action on the note alone).
*447 Defendants contend, however, that if the bank need not first pursue foreclosure proceedings, they are entitled to a fair market value credit in the note and guaranty proceeding. As a practical matter, that would render the mortgage the bank's primary security and relegate defendants' personal liability to any excess on the debt over and above the property's fair market value. This result is inconsistent with the express terms of the note, mortgage and guaranty documents. More importantly, it is a result that is unsupported by either statute or case law. We say this because the statutory mandate for a fair market credit is not applicable to commercial or business loans and because all of the case law applying the concept of fair market value credit as an equitable remedy, even as to commercial debtors, arise(s) in the context of a foreclosure proceeding and/or a resulting deficiency proceeding in which the creditor looks to the mortgage as the source of security. See Hudson City Savings Bank v. Hampton Gardens Ltd., 88 N.J. 16, 438 A.2d 323 (1981) (foreclosure proceeding); 79-83 Thirteenth Ave., Ltd. v. DeMarco, 44 N.J. 525, 210 A.2d 401 (1965) (deficiency proceeding following the foreclosure); Citibank, N.A. v. Errico, 251 N.J. Super. 236, 597 A.2d 1091 (App.Div. 1991) (deficiency proceeding following foreclosure); Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou, 206 N.J. Super. 637, 503 A.2d 392 (App.Div. 1986) (proceeding on surplus funds following foreclosure).
Thus, in 79-83 Thirteenth Ave. and prior to the removal by the Legislature of the distinction between notes and bonds secured by mortgages in connection with the protections accorded mortgagors in N.J.S.A. 2A:50-2, 3, the Supreme Court found that distinction incongruous and unjust where in either case, it was the mortgaged premises that the lender looked to as answerable for the debt. 44 N.J. at 533, 210 A.2d 401. And so the equitable concept of a fair market value credit evolved so that mortgagors should not be personally liable for more than the difference between that figure and the mortgage debt and that, correspondingly, the mortgagee does not obtain a windfall or double recovery where, for instance, the market is depressed and/or the only bidder is itself and it *448 retains the property for a nominal price. Id. at 535, 210 A.2d 401. See also id. at 537, 210 A.2d 401, Francis, J. (concurring) ("In the run-of-the-mill mortgage transactions, a great mass of which involves ordinary homeowners, the factor motivating the lender is the value of the property offered as security for the loan."); Morsemere Fed. Sav. & Loan Ass'n v. Nicolaou, 206 N.J. Super. at 645, 503 A.2d 392 ("[a] court of equity has the inherent power to prevent a potential double recovery or windfall to the judgment creditor who not only may profit on the purchase of the property at the foreclosure sale (if purchased for less than fair market value), but who also seeks to obtain satisfaction of his judgment....").
But these concerns arise only were the property is looked to as the source of security and, thus, in the context of a foreclosure proceeding or subsequent deficiency action. 79-83 Thirteenth Ave., 44 N.J. at 530 n. 1, 210 A.2d 401 (limiting the court's concerns to cases where the lender relies primarily upon the value of the property to secure a debt and recognizing the distinction in the banking industry between loans secured solely by a real estate mortgage and "those were a mortgage is taken only as collateral security". See N.J.S.A. 17:9A-64A(1), 70B). Indeed, the Supreme Court expressly stated there that "the forum for such relief should be only the foreclosure action...." 79-83 Thirteenth Ave., 44 N.J. at 535, 210 A.2d 401.
None of the cases stand for the proposition that a lender of a commercial loan secured both by a mortgage and personal guaranties must, either by first foreclosing or by providing the guarantors with the property's fair market value in a proceeding on the guaranty, look primarily to the property to secure repayment. Defendants entered into a business transaction with the bank, pledged both the property and their own assets and accepted loan monies under signed documents that expressly acknowledged the bank's right to choose the manner of securing payment in the event of default. It was the defendants, not the bank, who wanted to purchase and develop the property. It is not surprising *449 that the bank has chosen to seek repayment of the debt from their personal assets. If defendants choose at this point to sell the property to pay off their debt, and not subject their personal assets beyond what might be obtained from the property, they may do so. If they choose not to, and their personal assets are insufficient and the bank later chooses to foreclose, defendants at that time may assert a right to a fair market value credit. But none of the equitable concerns expressed early on in 79-83 Thirteenth Ave. and the later cases applying the fair market value credit concept to commercial/business loan foreclosures, and none of the concerns expressed by the Legislature, warrant saddling the bank with the property as its primary source of security.
Affirmed.