893 A.2d 1 (2006)
383 N.J. Super. 562
FIRST UNION NATIONAL BANK, as Indenture Trustee, Plaintiff-Respondent,
v.
PENN SALEM MARINA, INC., Marvin K. Hitchner, Jr., Defendants-Appellants, and
Marvin K. Hitchner, III, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 1, 2006.
Decided February 17, 2006.
*2 Todd W. Heck, Vineland, argued the cause for appellants (Basile & Testa, attorneys; Mr. Heck, on the brief).
James B. Daniels, argued the cause for respondent (Budd Larner, attorneys; Mr. Daniels, Christopher P. Anton, Short Hills, and Josh M. Mann, Morristown, on the brief).
*3 Before Judges CONLEY, WEISSBARD[1] and WINKELSTEIN.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
In this mortgage foreclosure action, we are called upon to decide whether the amount of a previously adjudicated Law Division judgment obtained on the note evidencing the underlying debt limits the amount of the foreclosure judgment. We conclude that it does not, and affirm the January 13, 2005 final judgment in foreclosure.
The material facts are not in dispute. On May 4, 2001, defendants Marvin Hitchner, Jr. (Hitchner) and Penn Salem Marina (collectively, defendants), executed and delivered to Interbay Funding a promissory note (the note) in the sum of $750,000. The note was secured by a mortgage executed that same date and guaranteed by defendant Marvin Hitchner, III.[2] The mortgage was a lien against defendants' commercial real property, a marina, in Pennsville. Interbay assigned the note and mortgage to plaintiff, First Union National Bank.
The note called for defendants to pay interest at the rate of 13.5 percent per year, with monthly installments commencing July 1, 2001, and the entire principal and all accrued and unpaid interest payable on June 1, 2016. Additional relevant portions of the note include:
4. DEFAULT AND ACCELERATION. If any payment required in this Note is not paid (a) prior to the fifth (5th) day after a Payment Date,... or (c) on the happening of any other default ... or under the terms of ... any of the Other Security Documents... at the option of Lender (i) the whole of the principal sum of this Note, (ii) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the Other Security Documents, (iii) all other monies agreed or provided to be paid by Borrower in this Note, the Security Instrument or the Other Security Documents, (iv) all sums advanced pursuant to the Security Instrument to protect and preserve the Property and any lien and security interest created thereby, and (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (defined below) or any part thereof ... shall without notice become immediately due and payable.
(Emphasis added).
. . . .
8. WAIVERS. [A]nd no ... waiver of any provision of this Note, ... or the Other Security Documents made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, ... under this Note, ... or the Other Security Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action ... as provided for in this Note ... or the Other Security Documents.
. . . .

*4 12. INCORPORATION BY REFERENCE. All of the terms, covenants and conditions contained in the Security Instrument and the Other Security Documents are hereby made part of this Note....
The mortgage instrument, like the note, reflected a principal amount of $750,000, and secured the performance of the obligations under the note. Among its terms, it listed the mortgagee's remedies in the event the borrowers defaulted.
Section 9.1 REMEDIES. Upon the occurrence of any Event of Default, to the extent permitted by applicable law, Borrower agrees that Lender may take any action available at law, in equity, and as otherwise provided in this Security Instrument, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower in and to the Property, including, but not limited to the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:
. . . .
(b) institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument ...;
. . . .
(f) recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the Other Security Documents[.]
The remedies were cumulative. Section 9.7, OTHER RIGHTS. ETC., permitted the lender to:
(c) [R]esort for the payment of the Debt to any other security held by or guaranties given to Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.
Defendants defaulted in their monthly payments. Consequently, on January 13, 2003, plaintiff filed a complaint in the Law Division seeking to collect the balance due on the note. Defendants failed to answer and on August 8, 2003, a final judgment by default was entered for $845,779.72.
While the Law Division action was pending, on February 4, 2003, plaintiff commenced a foreclosure action, to which defendants filed an answer and counterclaim. The court subsequently granted plaintiff's summary judgment motion; the court dismissed defendants' counterclaim, and remanded the complaint to the Office of Foreclosure of the Administrative Office of the Courts (Foreclosure Unit) to proceed as an uncontested matter.
In June 2004, plaintiff moved for entry of final judgment in the Foreclosure Unit. Accompanying the motion was a certification of amount due of $1,043,085.10. The primary difference between the amount of the judgment on the note ($845,779.72) entered in August 2003 and the amount requested in the 2004 foreclosure action represented additional accrued interest; advances made by the bank, which were *5 authorized under the terms of the mortgage for real estate taxes, forced placement of insurance, and property preservation; and for prepayment penalties. Plaintiff did not seek to recover those damages in the Law Division action.
In a letter to the Foreclosure Unit on November 1, 2004, defendants claimed that because the Law Division judgment was based on the same underlying indebtedness as the foreclosure action  the May 4, 2001 promissory note  the foreclosure judgment should not exceed $845,779.72, the amount of the final judgment entered in the Law Division.[3] Defendants frame their argument on appeal as follows: "[t]he earlier, final Law Division judgment operates as res judicata to affix the amount of the appellants' indebtedness to the plaintiff-respondent." Plaintiff responds that neither the doctrine of res judicata nor collateral estoppel acts as a limitation upon the amount of the foreclosure judgment. We agree with plaintiff.
"[R]es judicata and collateral estoppel serve to insulate courts from the relitigation of claims and issues, and to prevent harassment to parties...." Culver v. Ins. Co. of N. Am., 115 N.J. 451, 468, 559 A.2d 400 (1989). To determine whether two causes of action are the same for purposes of res judicata, we examine the similarity of the acts complained of, the demand for relief, the theory of recovery, the witnesses and documents necessary at trial, and the material facts. Id. at 461-62, 559 A.2d 400. Collateral estoppel, considered "a branch of res judicata, bars a party from relitigating issues which were actually litigated and determined in a prior case involving a different claim or action." N.M. v. J.G., 255 N.J.Super. 423, 431, 605 A.2d 709 (App.Div.1992).
As applied to the collection of a debt secured by a mortgage, neither res judicata nor collateral estoppel limit the amount of the foreclosure judgment to the amount of the judgment on the note.
A note, or bond, is a contract by the obligor to pay a debt. Colton v. Depew, 60 N.J. Eq. 454, 458, 46 A. 728 (E. & A.1900). The mortgage, "which is a conveyance of an estate in the mortgaged premises," is security for the payment of the underlying debt. Ibid.; 29 N.J. Practice, Law of Mortgages, § 4.1 at 196-204 (Myron C. Weinstein) (2001). To enforce the terms of a note and a mortgage requires discrete actions. A suit on a note is in personam, that is, against an individual involving personal rights, see Black's Law Dictionary, 711 (5th ed. 1979), while an action in foreclosure is quasi in rem, providing relief only against the property subject to the mortgage lien. Bache-Wiig v. Fournier, 299 B.R. 245, 249 (Bankr. D.Me.2003); Montclair Savs. Bank v. Sylvester, 122 N.J.Eq. 518, 521, 194 A. 811 (E. & A.1937); Resolution Trust Corp. v. Berman Indus., Inc., 271 N.J.Super. 56, 62, 637 A.2d 1297 (Law Div.1993); Central Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J.Super. 289, 302-03, 448 A.2d 498 (Ch. Div.1982).
Though a judgment arising out of a suit on a note constitutes a lien *6 against all of a defendant's real property, a mortgage foreclosure suit gives the creditor the right to collect the amount due only from the land subject to the mortgage lien. Montclair, supra, 122 N.J.Eq. at 521, 194 A. 811; Mann v. Bugbee, 113 N.J.Eq. 434, 439, 167 A. 202 (Ch.Div.1933). Nevertheless, the foreclosure suit does not preclude a creditor from seeking a deficiency against a debtor's assets other than that subject to the lien of the mortgage. Montclair, supra, at 521, 194 A. 811; Mann, supra, 113 N.J.Eq. at 439-440, 167 A. 202.
When a debt is secured for a business or commercial purpose, as here, it is not necessary that the mortgage be foreclosed before an action on the note is brought; the creditor may bring an action on the note alone. N.J.S.A. 2A:50-2.3; N.J.S.A. 2A:50-2; Summit Trust Co. v. Willow Bus. Park, L.P., 269 N.J.Super. 439, 446, 635 A.2d 992 (App.Div.) (where mortgage loans involve commercial transaction, lenders not required to foreclose mortgage before seeking judgment on note), certif. denied, 136 N.J. 30, 641 A.2d 1041 (1994).
A mortgage lien survives after a judgment is entered on the underlying note. In re Duback, 330 B.R. 337, 339 (Bankr.D.R.I.2005); Bache-Wiig, supra, 299 B.R. at 249; Colton, supra, 60 N.J. Eq. at 458, 46 A. 728. Until the mortgage debt is actually satisfied, "the recovery of a judgment on the obligation secured by a mortgage, without the foreclosure of the mortgage, although merging the debt in the judgment, has no effect upon the mortgage or its lien, does not merge it, and does not preclude its foreclosure in a subsequent suit instituted for that purpose...." 55 Am.Jur.2d Mortgages § 524 (1996). And, even while the underlying obligation may become unenforceable by reason of the expiration of the statute of limitations, or a bankruptcy by the maker of the obligation, a mortgagee may nevertheless enforce the mortgage through a foreclosure action. 29 N.J. Practice, supra, § 4.1 at 200-02.
Thus, it is clear that our jurisprudence has traditionally treated a lawsuit to enforce the terms of a note as distinct from a mortgage foreclosure action. While the lawsuits are connected in the sense that they arise from a default by the debtor on one or more terms of the note and/or mortgage, each action presents a creditor with different remedies, each independent of the other. In a Law Division action, the lender seeks a money judgment. In a foreclosure action, the lender seeks not only to fix the amount due on the note and mortgage, but possession of the mortgaged premises; that the debtors be foreclosed of all equity of redemption in the mortgaged property; and the property be sold to satisfy the debt.
As an additional indication of the difference between the two actions, it is notable that a suit on the underlying indebtedness is specifically precluded by court rule from being joined in a foreclosure action. See R. 4:64-5 (precluding non-germane claims, which encompasses claims on the underlying obligation, from being joined in a mortgage foreclosure proceeding); Family First Fed. Savs. Bank v. DeVincentis, 284 N.J.Super. 503, 512, 665 A.2d 1119 (App.Div.1995) (same); see also Prevratil v. Mohr, 145 N.J. 180, 195, 678 A.2d 243 (1996) (entire controversy doctrine does not require that judgment on underlying indebtedness be joined in foreclosure action, or vice versa) (citing R. 4:64-5).
Facing a similar but not identical issue, a bankruptcy court in Maine found that because an action on a promissory note and a foreclosure action on a securing mortgage are distinct, res judicata, or *7 claim preclusion, "will not bar recovery on a mortgage after judgment on the underlying debt." Bache-Wiig, supra, 299 B.R. at 249. The court grounded its decision on the difference between the actionsthat the lawsuit to enforce the note was in personam, while the mortgage foreclosure was quasi in rem. Ibid.; cf. Resolution Trust Corp., supra, 271 N.J.Super. at 62, 637 A.2d 1297; Mann, supra, 113 N.J. Eq. at 439-40, 167 A. 202 (right to require a defendant to be personally responsible for debt not part of foreclosure suit, but must abide "suit for personal judgment for deficiency"); see also Summit Trust Co., supra, 269 N.J.Super. at 448-49, 635 A.2d 992 (emphasizing different rights afforded to lender by the note as opposed to the mortgage instrument).
Given the differences between actions to collect a debt under a note and to foreclose a mortgage, to limit the foreclosure judgment to the amount recovered in the Law Division action would not foster the principles of either res judicata or collateral estoppel  "to insulate courts from the relitigation of claims and issues. and to prevent harassment to parties." See Culver, supra, 115 N.J. at 468, 559 A.2d 400. Simply put, the actions reflect different claims with different issues. Fairness to defendants does not require the process to end after the first lawsuit, which is a primary justification for the application of either res judicata or collateral estoppel. See Restatement (Second) of Judgments § 19 comment a (1982) ("The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end.").
Defendants also contend that because at the time plaintiff filed suit on the note it was in a position to seek, in that suit, reimbursement for advances made under the mortgage through that date, it waived the right to seek those advances in the subsequent foreclosure proceeding. We disagree. Paragraph four of the note recited that in the event defendants defaulted, "at the option of Lender ... all other monies agreed or provided to be paid by [defendants] in this Note, [and] the [mortgage] ... shall ... become immediately due and payable." This language did not require the lender to seek those additional charges in a suit on the note, but simply gave the lender the option to do so. And too, the note provided that plaintiff could waive the note's provisions without affecting defendant's liability.
The mortgage instrument also afforded plaintiff the option of how and in what manner to collect the debt in the event defendants defaulted. It allowed plaintiff to
take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of [plaintiff] thereafter to foreclose this [mortgage]. The rights of [plaintiff] under this [mortgage] shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others.
Plaintiff was permitted to seek judgment either under the note or mortgage, or both, and in no particular order. Hence, defendants' argument that plaintiff is collaterally estopped from collecting sums not demanded in its suit on the note is belied by defendants' specific agreement to the contrary in both the note and the mortgage.
As authority for their position, defendants rely upon In re Mitchell, 281 B.R. 90 (Bankr.S.D.Ala.2001). In Mitchell, the issue was whether the mortgage lien survived after the note was reduced to judgment, *8 or if by electing to sue on the note, the lender gave up its security status and waived its rights under the mortgage. Id. at 91. Defendants point to the language in Mitchell that states: "[a]s to all issues concerning the note, including the amount owed, the judgment is a final determination of those issues and res judicata applies. Although the judgment does not destroy the lien of the mortgage, it judicially determines the amount thereof." Id. at 93.
For two reasons, we respectfully disagree with the court's conclusion that the judgment on the note judicially determines the amount of the mortgage. First, both by contract  the note and mortgage  and by established legal precedent, plaintiff had the option to seek redress either from the note or mortgage; and, seeking a judgment under one does not bar, or limit, a judgment under the other. Second, the Mitchell court relied on In re Clark, 738 F.2d 869 (7th Cir.1984), for its conclusion that the judgment arising out of the suit on the note determines the amount due under the mortgage. See Mitchell, supra, 281 B.R. at 93. In Clark, however, the "judgment" that determined the amount of the mortgage was not a separate judgment on a note, but the foreclosure judgment itself. Id. at 871. The Mitchell court's reliance on Clark, therefore, to conclude that the suit on the note judicially determined the amount of the mortgage, was, in our opinion, misplaced.
In sum, plaintiff's remedies under the mortgage remained, despite the previously obtained judgment on the note. Defendants' position would blur the lines between the two proceedings, and disturb over one hundred years of legal precedent. Actions to enforce a mortgage and its underlying promissory instruments are separate, and should be so treated.
We affirm the judgment of foreclosure.
NOTES
[1] Judge Weissbard did not participate in oral argument. With the consent of counsel, he has joined in this opinion.
[2] Defendant Marvin Hitchner, III is not a party to this appeal.
[3] The record does not reveal whether this letter was considered by the Foreclosure Unit. While in an uncontested foreclosure proceeding a debtor is entitled to notice of the proposed amount of the judgment, see R. 4:64-1(b), the New Jersey Court Rules do not provide a procedure to address a debtor's objections to the amount requested. Nor does the rule governing the Office of Foreclosure give it the authority to resolve this type of disputed issue. See R. 1:34-6. While receipt of an objection would suggest that the case is no longer uncontested, and should be returned to the general equity judge in the vicinage in which the complaint was filed, that did not occur here.