Caroleen Jakmian,          :
         Appellant          :
         :
         v.          :
         :
City of Philadelphia and Southeastern    :    No. 665 C.D. 2023
Pennsylvania Transportation Authority    :    Submitted: June 4, 2024

BEFORE:    HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge (P.)
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: July 16, 2024

Caroleen Jakmian (Appellant) appeals from the Philadelphia County Common Pleas Court's (trial court) February 7, 2023 order (entered February 9, 2023) granting nonsuit in favor of the City of Philadelphia (City) and Southeastern Pennsylvania Transportation Authority (SEPTA) (collectively, Appellees).[1] Essentially, Appellant presents two issues for this Court's review: (1) whether the trial court erred and abused its discretion by entering nonsuit in Appellees' favor; and (2) whether the trial court erred and abused its discretion by granting SEPTA's Motion in Limine to preclude Appellant from asking SEPTA's witnesses questions regarding statements made by SEPTA spokeswoman, Jerri Williams (Williams).[2] After review, this Court affirms.

---

[1] The trial court denied Appellant's post-trial motions on June 7, 2023.

[2] In Appellant's Statement of the Questions Involved, she presented four issues. The first two issues were (1) whether the trial court erred and abused its discretion by entering nonsuit in favor of Appellees when the trial court improperly removed the question of negligence from the jury's consideration; and (2) whether the trial court erred and abused its discretion by entering

On August 21, 2020, the front tire of Appellant's bicycle became stuck in a SEPTA trolley track located on 12th Street in the City causing Appellant to be thrown from her bicycle and suffer, among other injuries, a fractured right arm. On October 20, 2020, Appellant filed a Complaint against Appellees in the trial court alleging negligence and seeking damages.[3] Specifically, Appellant averred that SEPTA and the City had a duty to remove all trolley tracks from the street and/or pave over the rails where trolley service is not in use.

---

nonsuit in favor of Appellees where the trial court improperly applied a heightened standard of care to a straightforward negligence action. *See* Appellant Br. at 4. This Court has combined these issues in its stated first issue and will address them accordingly herein. The third issue Appellant presented is this Court's stated second issue. The fourth issue Appellant presented was whether the trial court erred and abused its discretion in granting SEPTA's Motion in Limine to preclude Appellant from presenting evidence of a 2011 accident. *See* Appellant Br. at 5. However, Appellant does not specifically identify this issue in her argument, therein referring only to a 2014 and a 2015 accident; therefore, she presented no argument concerning a 2011 accident for this Court to address. *See* Pennsylvania Rule of Appellate Procedure 2119(a), which provides: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]" Pa.R.A.P. 2119(a).

Notwithstanding, relative to the 2011 accident, the trial court ruled:

> SEPTA's motion is partially granted[] [and] partially denied. [Appellant's] Counsel shall not be permitted to refer to any hearsay information in the newspaper articles about that 2011 accident. [Appellant's C]ounsel is permitted to ask the corporate designee whether . . . he or she was aware of a 2011 accident and whether he or she was aware of any action SEPTA took in regard to that.

Reproduced Record at 24a. Appellant's Counsel replied: "Thank you, Your Honor. Understood." *Id*. Appellant's Counsel did not object to the trial court's ruling, and Appellant's Counsel did not ask SEPTA's corporate designee any questions relating thereto.

[3] Appellant also named the Commonwealth of Pennsylvania, Department of Transportation (DOT) as a defendant; however, DOT was dismissed from the action by joint stipulation of the parties filed on July 26, 2022.

During the jury trial, Appellant testified that she was riding her bicycle on August 21, 2020, southbound on 12th Street, a route she often traveled between her residence and the gym. *See* Reproduced Record (R.R.) at 88a-90a. Appellant described that there are trolley tracks that run down the middle of the street, and that she was riding in the center of the tracks, so there was a track to her right and a track to her left. *See* R.R. at 119a-120a. She related that as she moved to her right to clear the roadway for a car that was tailgating her, the bike tire got stuck in the trolley track, and she was thrown off her bike and crashed into a parked vehicle. *See* R.R. at 90a. Appellant stated that she took photographs of the tracks where she fell and explained that her bicycle tire got stuck in the opening between the rails. *See* R.R. at 92a-94a. Appellant did not identify any defect in the rails themselves.

Appellant presented SEPTA's Track Department Director, Philip Metzger (Metzger), who testified that he is responsible for, *inter alia*, maintenance of the trolley tracks. *See* R.R. at 132a. Metzger explained that the Route 23 trolly line operated on 12th Street; however, SEPTA took the trolleys out of service in 1992 and now runs the Route 23 bus on 12th Street. *See* R.R. at 134a-135a. Metzger related that, at the time of Appellant's accident, the trolley service had not been in use for at least 30 years, and SEPTA has no plans to reinstate trolley service. *See* R.R. at 135a. Metzger also stated that SEPTA is responsible for maintaining the tracks regardless of whether they are active or inactive. *See* R.R. at 136a.

Metzger described that the Route 23 line consists of 26 miles of track and that, in 1992, the Route 23, Route 15, and Route 56 trolleys were removed from service. *See* R.R. at 142a-143a. Metzger declared that, although trolley service is inactive on that line, SEPTA has not abandoned it. *See id*. Metzger explained that

3

in order for SEPTA to abandon trolley tracks (i.e., to divest itself of responsibility to maintain the track), it must undertake a formal process that involves executing an agreement with the City. *See* R.R. at 149a-151a. He expounded that, at the current time, SEPTA and the City are considering SEPTA's request to abandon five trolley lines; however, the Route 23 line is not one of them. *See* R.R. at 152a.

Metzger estimated that it would cost SEPTA one million dollars per mile to pave over trolley tracks. *See id.* Metzger confirmed that there have been areas throughout the City, including part of the Route 23 line, where SEPTA had paved over portions of track. *See* R.R. at 153a. Metzger explained that SEPTA paves over areas where the track has created a hazardous road condition - for example, SEPTA paved over approximately one-third of a mile on 11th and 12th Streets between Market and Arch Streets, which cost roughly $300,000.00. *See id.* Metzger specified that that portion of the track had to be paved because there were potholes, depressions, and buckled rails. *See id.* Metzger related that there are times when SEPTA returns an inactive track to active status due to population changes (i.e., the Route 15 trolley line was inactive, but put back into active service in the mid-2000s when Sugar House casino was built). *See* R.R. at 154a. Metzger added that the Route 15 trolley line was active for 10 to 12 years, and then became inactive while SEPTA made changes to the rail line; however, SEPTA expects to reactivate it in the near future. *See id.*

Appellant also presented the City Streets Department's Chief Highway Engineer, Stephen Lorenz (Lorenz), who confirmed that 15 intersections with trolley tracks throughout the City have been paved over at The Bicycle Coalition of the City of Philadelphia's (The Bicycle Coalition) requests. *See* R.R. at 168a-170a. Lorenz

4

confirmed that SEPTA is solely responsible for maintaining the trolley tracks in the City. *See* R.R. at 171a.

After Appellant rested her case, Appellees moved for nonsuit,[4] which the trial court granted. Appellant filed a post-trial motion seeking removal of the nonsuit, which the trial court denied. Appellant timely appealed to this Court. On June 23, 2023, the trial court directed Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). On July 11, 2023, Appellant filed her Rule 1925(b) Statement. On August 4, 2023, the trial court filed its opinion pursuant to Rule 1925(a).

Initially,

> [i]n reviewing the entry of a nonsuit, [an appellate court's] standard of review is well[ ]established: we reverse only if, after giving appellant the benefit of all reasonable inferences of fact, we find that the fact[-]finder could not reasonably conclude that the essential elements of the cause of action were established. Indeed, when a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

*Munoz v. Children's Hosp. of Phila.*, 265 A.3d 801, 805-06 (Pa. Super. 2021) (quoting *Rolon v. Davies*, 232 A.3d 773, 776-77 (Pa. Super. 2020)).

---

[4] Appellees' Counsel each requested a "directed verdict." R.R. at 176a. However, this Court and the trial court acknowledge that the proper procedure after a plaintiff rests her case is to request a nonsuit. *See* Pa.R.Civ.P. 230.1(c).

Appellant first argues that the trial court erred and abused its discretion by entering nonsuit in Appellees' favor when the trial court improperly removed the question of negligence from the jury's consideration and where the trial court improperly applied a heightened standard of care to a straightforward negligence action. Appellant contends that a reasonable fact-finder could clearly find that Appellant had presented sufficient evidence to demonstrate the existence of a defect and establish liability against Appellees when viewing all of the evidence in a light most favorable to Appellant. Appellant cites *Cagey v. Commonwealth*, 179 A.3d 458 (Pa. 2018), to support her position.

SEPTA rejoins that the trial court correctly entered nonsuit in its favor, as there was no evidence upon which the jury could have found SEPTA had breached any duty to Appellant. The City retorts that Appellant's claim against the City fails because it has no duty to maintain, repair, or remove SEPTA's trolley tracks. The City contends that SEPTA admitted its sole responsibility for the tracks, and Appellant made no effort to argue otherwise. Alternatively, the City asserts that Appellant's claim fails because she did not show that the City breached some standard of care by not removing or paving inactive tracks.

At the outset,

> Section 8542(a) of [the portion of the Judicial Code commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act),[5]] provides that a local agency[FN]9 shall be liable for damages if: (1) the damages would be recoverable under common law or a statute creating a cause of action if caused by a person without immunity;

---

[5] 42 Pa.C.S. §§ 8541-8542.

6

(2) the injury was caused by a local agency or an employee thereof; and (3) the negligent act falls within an exception enumerated in [S]ection 8542(b) of the [Tort Claims Act]. 42 Pa.C.S. § 8542(a).

> [FN]9 Section 5801 [sic] of the Judicial Code defines a "[l]ocal agency" as "[a] government unit other than the Commonwealth [of Pennsylvania (Commonwealth)] government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers[,] or responsibilities under [Subchapter A of Chapter 23 of the General Local Government Code,] 53 Pa.C.S. [§§ 2301-2317] (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities [there]under . . . ." 42 Pa.C.S. § 8501.

*Lacava v. Se. Pa. Transp. Auth.*, 157 A.3d 1003, 1008-09 (Pa. Cmwlth. 2017). The City is a local agency. In this context, SEPTA is a Commonwealth agency. *See id*.

> Section 8542 of the Tort Claims Act provides, in relevant part:
>
> **(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (6) *Streets.--*
>
> (i) **A dangerous condition of streets owned by the local agency**, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the

event to have taken measures to protect against the dangerous condition.

(ii) **A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies**, if all of the following conditions are met:

(A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:

(I) had not expired or been otherwise terminated prior to the occurrence of the injury; or

(II) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.

(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.

(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred[,] and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b) (text emphasis added).

Section 8522 of what is commonly referred to as the Sovereign Immunity Act, applicable to SEPTA, states in pertinent part:

a) **Liability imposed.--**The General Assembly, . . . does hereby waive, in the instances set forth in subsection (b) . . . sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a

8

negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**b) Acts which may impose liability.--**The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

**(4) Commonwealth real estate, highways and sidewalks.**--**A dangerous condition of** Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and **highways under the jurisdiction of a Commonwealth agency**, except conditions described in paragraph (5).

42 Pa.C.S. § 8522 (text emphasis added).

"[A] claim for damages for injuries caused by a substance or an object on Commonwealth real estate must allege that the dangerous condition 'derive[d], originate[d] or ha[d] its source [in] the Commonwealth realty' itself, if it is to fall within the Sovereign Immunity Act's real estate exception." *Jones v.* [*Se.*] [*Pa.*] *Transp*[.] *Auth*[.], . . . 772 A.2d 435, 443 ([Pa.] 2001) (citation omitted). "[A]ssuming all other requirements of the statutory exception at [Section] 8522(b)(4) [of the Sovereign Immunity Act] are met, the Commonwealth may not raise the defense of sovereign immunity when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair or design." *Id*. at 443-44.

*Lacava*, 157 A.3d at 1013.

In *Cagey*, Joisse Cagey (Cagey) and her husband brought an action in the Common Pleas Court (Common Pleas) against the Department of Transportation (DOT) for negligence for injuries suffered when her vehicle struck a guardrail. Specifically, Cagey alleged that she and her husband were travelling southbound on State Route 551 in Beaver County, Pennsylvania, when they encountered snow and ice on the roadway. As a result of those conditions, Cagey, the car's driver, lost control of the vehicle, which spun off the roadway and slammed into a guardrail adjacent to the road. The guardrail penetrated the side of the vehicle, resulting in substantial injuries to Cagey.

DOT filed a motion for judgment on the pleadings (motion), in which it argued that the Sovereign Immunity Act barred the Cageys' claims. DOT argued that the Cageys' causes of action did not fall within any of the enumerated exceptions to sovereign immunity. Common Pleas granted DOT's motion. The Cageys appealed to this Court, which affirmed Common Pleas' order. The Cageys appealed to the Pennsylvania Supreme Court, which reversed this Court's decision.

The Pennsylvania Supreme Court explained, in relevant part:

> The term "dangerous condition" is unambiguous and plainly encompasses any condition that presents a danger. *See* [42 Pa.C.S. § 8522(b)(4)]. The Cageys averred that the guardrail causing their injuries was a "**dangerous condition**" in that **it was defective**, **negligently**[ ]**installed**[,] **and uncrashworthy**. Specifically, they alleged that **a dangerous "blunt end" or "boxing glove" terminal end treatment of the guardrail speared and penetrated the driver's side door**, resulting in "significantly more severe injuries" to [] Cagey than if she had not been speared by the "boxing glove" end treatment.

10

Thus, on the facts averred, it cannot be said that the law would, with certainty, prevent recovery.

*Cagey*, 179 A.3d at 464 (emphasis added; internal record citations omitted).

Contrary to the facts in *Cagey*, Appellant herein did not present evidence to establish that the trolley rail was defective, negligently installed, or uncrashworthy, nor did Appellant present evidence that the rail itself caused her injury. Rather, Appellant's evidence merely established that her bike tire got stuck in the rail, causing her to fall off her bicycle. Accordingly, *Cagey* is inapposite.

In *Lacava*, the appellant filed an action in Common Pleas alleging that SEPTA and the City were liable for his injuries that resulted when the wheel of his motor scooter struck a rail that had been paved over and thereafter exposed. After trial, a jury found both SEPTA and the City liable, and awarded Lacava $700,000.00 in damages. Thereafter, the City and SEPTA filed post-trial motions seeking, *inter alia*, judgment notwithstanding the verdict. Common Pleas denied the post-trial motions. This Court reversed Common Pleas' order, explaining:

> [A]s [Common Pleas] noted, the record evidence indicates that the alleged dangerous condition of SEPTA's real estate was an exposed rail. However, **the rail's exposure does not constitute a dangerous condition that derives or originates in the realty itself**. *See Jones*, 772 A.2d at 443. Rather, as the trial court aptly noted, the exposure of the rail occurred because "there was a section of pavement that was depressed and exposed . . . the trolley rail." . . . This characterization indicates that the purportedly dangerous condition derived from the depressed pavement, not from the rail itself. Indeed, the trial court's description of the dangerous condition lends itself more to the dangerous condition contemplated by [S]ection 8522(b)(5) of the Sovereign Immunity Act, rather than [S]ection 8522(b)(4) [of the Sovereign Immunity Act].

11

*See* 42 Pa.C.S. § 8522(b)(5) ("A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements . . . ."); *see also Cressman v.* [*Dep't*] *of Transp*[.], . . . 538 A.2d 992, 994 ([Pa. Cmwlth.] 1988) ("We believe that potholes or sinkholes, as used in Section 8522(b)(5) [of the Sovereign Immunity Act], are intended to encompass any such holes in the roadway caused by deterioration resulting from a combination of water, freezing and thawing and traffic."). Moreover, the "real estate" exception expressly excludes dangerous conditions enumerated in the "pothole" exception.

Because **Lacava failed to present sufficient evidence establishing a dangerous condition of the trolley rail** sufficient to fall within the "real estate" exception to sovereign immunity, **there was no basis for the jury to conclude that Lacava's claims fell within the "real estate" exception to sovereign immunity**. Accordingly, the trial court's decision denying judgment [notwithstanding the verdict] on these grounds was erroneous.

*Lacava*, 157 A.3d at 1014-15 (emphasis added; internal record citations omitted).

Similarly, here, the trial court opined:

Appellant argues that she met her burden of proof by relying on newspaper articles about prior incidents where trolley tracks were paved over in another part of the [C]ity due to complaints from cyclists. Appellant seems to be making a *res ipsa loquitur* strict liability argument where the jury would have to find that all trolley tracks not currently in service are defective. Appellant offered no expert opinion to support this theory. Further, Appellant argues that because SEPTA has paved over some track[s] due to actual defective conditions that existed on the tracks in other places, SEPTA is negligent for failing to pave over the trolley tracks where Appellant's accident occurred. **The bald statement that a condition is defective by its**

12

**mere existence**, **without supporting evidence**, **falls far below Appellant's burden of proving negligence**. **Unless a condition is so plainly dangerous that a lay person can come to that conclusion by merely observing the condition**, **expert testimony is needed to explain why the condition is defective**. *See Walthour v. . . . Dep't of Transp.*, 31 A.3d 762,767 (Pa. [Cmwlth.] 2011) (holding that the plaintiff[']s claim of a dangerous condition concerning traffic controls could only go to the jury "once the requisite expert testimony needed in this case had established the basis for a jury's decision[]").

["]A danger is *known* if it is [']recognized that it is dangerous,['] and *obvious* if [']both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising normal perception, intelligence, and judgment,['] [*Carrender v. Fitterer*, 469 A.2d 120, 123-24 (Pa. 1983)] (citing [] Restatement [(Second)] § 343A cmt. B [(Am. Law Inst. 1965)]).["] *Hinerman v. Westmoreland Cnty. Airport Auth.*, [297 A.3d 59, 63 (Pa. Cmwlth. 2023).]

Here, Appellant failed to show how a trolley rail would be an obvious danger such that expert testimony was not needed to prove that it was, in fact, dangerous. Appellant offered no competent evidence, by expert or otherwise, to show why the existence of trolley tracks presents a dangerous condition.[6]

---

[6] This reasoning applies to the City's liability as well because both the Tort Claims Act and the Sovereign Immunity Act require a "negligent act" before proceeding to the exceptions, 42 Pa.C.S. § 8542(a); 42 Pa.C.S. § 8522(a), and the Tort Claims Act's relevant exception specifically refers to "a dangerous condition of" streets owned by the local agency, 42 Pa.C.S. § 8542(b)(6), and the Sovereign Immunity Act's relevant exception refers to "a dangerous condition of" Commonwealth highways. 42 Pa.C.S. § 8522(b)(4). *See Jones*, 772 A.2d at 443 ("[T]he key to [Section] 8522(b)(4) [of the Sovereign Immunity Act]'s meaning lies in the polestar of legislative intent, the plain meaning of the exception's "dangerous condition of" language. 42 Pa.C.S. § 8522(b)(4); 1 Pa.C.S. § 1921.").

Trial Ct. Op. at 9-10. This Court discerns no error in the trial court's reasoning. "[A]fter giving [A]ppellant the benefit of all reasonable inferences of fact, [this Court] find[s] that the fact[-]finder could not reasonably conclude that the essential elements of the cause of action were established." *Munoz*, 265 A.3d at 806 (quoting *Rolon*, 232 A.3d at 776). Accordingly, the trial court properly granted nonsuit in Appellees' favor.[7]

Appellant next argues that the trial court erred and abused its discretion by granting SEPTA's Motion in Limine to preclude Appellant from asking SEPTA's witnesses about Williams' statements. Specifically, the trial court precluded Appellant from presenting evidence of SEPTA spokespeople Williams' and Andrew Busch's comments contained within a news article written about the danger the Route 23 Trolley line presents to cyclists. The trial court determined that the articles and statements were hearsay, and that no exclusion or exception applied. Appellant contends that evidence of a 2015 accident and any other prior accidents are directly relevant to prove that SEPTA had notice of the trolley tracks' dangerous nature and was negligent in failing to remove them. Appellees rejoin, *inter alia*, that, although Appellant now complains about not being able to question SEPTA's corporate designee about Williams' statements, and despite the trial court holding it open, during trial, Appellant never identified for the trial court the purported admission or made argument as to admissibility.

> The law is well settled that "[o]ur standard of review of an evidentiary ruling made by the trial court is extremely narrow." *Capoferri* [*v. Child.'s Hosp. of Phila.*, 893 A.2d

---

[7] Because this Court concludes that Appellant did not establish a dangerous condition, the issue of SEPTA's and/or the City's alleged duty of care is moot.

14

133,] 143 [(Pa. Super. 2006)]. "The admission or exclusion of evidence is a matter within the sound discretion of the trial court, which may only be reversed upon a showing of a manifest abuse of discretion. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Potochnick v. Perry*, 861 A.2d 277, 282 (Pa. Super. 2004).

*Charlton v. Troy*, 236 A.3d 22, 35-36 (Pa. Super. 2020).

Here, the Motion in Limine that Appellant references is SEPTA's Motion to Preclude Newspaper Articles. SEPTA's Counsel argued before the trial court:

> THE TRIAL COURT: . . . . Let[']s] get to SEPTA's motion. SEPTA's [M]otion to [P]reclude [N]ews[paper] [A]rticles.
>
> [SEPTA's Counsel]: Your Honor, in the discovery in this case in the pretrial submissions, [Appellant] identified three newspaper articles about Route 23. . . . [W]e filed a motion to preclude all those as hearsay; the material[] discuss [sic] prior accidents, it discussed a lot of inadmissible material.
>
> . . . .
>
> [SEPTA's Counsel]: It's a newspaper article called Hidden City. I think this will help out if Your Honor can take a look at it. This is a newspaper article that references an automobile accident -- a bicycle accident that occurred by someone named Kathy Monroe.
>
> THE TRIAL COURT: In what year?
>
> [SEPTA's Counsel]: That is what I was looking for, Your Honor. I believe it happened in 2011. I am looking to see if it is referenced in the article. So[,] it was 9 years or 10

15

years before this accident. And it's again, at Exhibit A, Your Honor.

. . . .

THE TRIAL COURT: What -- [Appellant's Counsel], what is your intended purpose of referencing a newspaper article?

[Appellant's Counsel]: My intended purpose in referencing the newspaper article is not to elicit any hearsay things that are said in the newspaper articles. It's merely to elicit that the fact there was a 2011 fall of a -- of a bicyclist who was a member of The Bicycle Coalition.

THE TRIAL COURT: Okay.

[Appellant's Counsel]: And after that, The Bicycle Coalition worked with [t]he City . . . and SEPTA to pave over certain intersections which is acknowledged.

THE TRIAL COURT: Okay. What does that have to do with the newspaper article? So[,] you know that there was this accident, right? You know that whatever you alleged happened, happened. What does it have to do with the newspaper? Because this is all hearsay, what's in the newspaper article.

[Appellant's Counsel]: Well, if it is -- if it says that SEPTA or [t]he City did something or said something, I should be able to question about it. **It's admissions of party opponents**. **SEPTA's spokesperson has statements**, in the article, and I want to question -

THE TRIAL COURT: Well did you take a deposition of SEPTA's spokesperson?

[Appellant's Counsel]: No. She was their spokesperson, you know, years and years ago. I -- no. I -- but I took a corporate designee[,] and I asked him about it. **If SEPTA made a statement**, **I should be able to ask [its]corporate**

16

**designee about it**.  **If he doesn't know, he can say he doesn't know**.

THE TRIAL COURT: Okay.  Since you took the deposition of the corporate designee, he didn't do that though?

[Appellant's Counsel]: No, he didn't.  **He was not aware of statements made by the corporate designee** [sic].

THE TRIAL COURT: All right.  So[,] there are -- are there certain statements in here that are made by SEPTA that relates to this issue?

[SEPTA's Counsel]: I don't believe so, Your Honor.  I am looking at --

THE TRIAL COURT: What statements are you talking about?  We are not talking about what the reporter said.  We are talking about what someone from SEPTA may have said.

[Appellant's Counsel]: Your Honor, SEPTA is quoted in some portions.  I'm just trying to find it.

[SEPTA's Counsel]: I'm not sure what article [Appellant's Counsel] is referring to.

THE TRIAL COURT: All right.  Let's move on.  Because I -- I don't want to take the time for [Appellant's Counsel] to sift through every page.  There's a lot here.  So[,] **if you have certain statements that you** [**are**] **saying are attributable directly to SEPTA**, **I would** [**sic**] **consider that**.  As far as anything else in the newspaper articles, those are not - it's not admissible.

[Appellant's Counsel]: All right.

THE TRIAL COURT: So, **do you want me to hold this motion open**?

[Appellant's Counsel]: **Yes**, **Your Honor**.

17

THE TRIAL COURT: All right.  So[,] let's move on.

R.R. at 14a-18a (emphasis added).  Appellant's Counsel did not raise the issue again, before or during the trial, nor did Appellant object on the record to the trial court's ruling.

> Based on the above-quoted discussion, the trial court concluded:
>
> Appellant did not object to the aforesaid rulings; in fact, she assented to the [trial] court's decisions.  However[,] even assuming Appellant had not waived this issue, the [trial] court properly determined that [] the hearsay evidence contained in the newspaper accounts, other than direct statements made by a SEPTA spokesperson, were inadmissible. Appellant['s Counsel] was permitted to establish constructive notice by questioning [] Metzger about spokesperson statements, and he declined to do so.

Trial Ct. Op. at 13.  This Court discerns no error in the trial court's reasoning.  After a thorough review of the record, this Court cannot conclude that the trial court committed "a manifest abuse of discretion[.]"  *Charlton*, 236 A.3d at 35.  Accordingly, the trial court did not err by granting SEPTA's Motion in Limine.

For all of the above reasons, the trial court's order is affirmed.

 

_____
ANNE E. COVEY, Judge


Judge Wolf did not participate in the decision in this matter.

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Caroleen Jakmian,           :
         Appellant      :
                           :
        v.                :
                           :
City of Philadelphia and Southeastern  :   No. 665 C.D. 2023
Pennsylvania Transportation Authority  :

## O R D E R

AND NOW, this 16th day of July, 2024, the Philadelphia County Common Pleas Court's February 7, 2023 order (entered February 9, 2023) is affirmed.

_____
ANNE E. COVEY, Judge