921 A.2d 417

FIRST UNION NATIONAL BANK, AS INDENTURE TRUSTEE, PLAINTIFF–RESPONDENT, v. PENN SALEM MARINA, INC., DEFENDANT–APPELLANT, AND MARVIN HITCHNER, JR., MARVIN HITCHNER, III, FGS ASSOCIATES, L.L.C., AND ABC CORP., A FICTITIOUS COMPANY, DEFENDANTS.

Argued November 28, 2006—Decided May 10, 2007.

*Todd W. Heck,* argued the cause for appellant (*Basile & Testa,* attorneys).

*James B. Daniels,* argued the cause for respondent (*Budd Larner,* attorneys; *Mr. Daniels, Donald P. Jacobs* and *Christopher P. Anton,* on the letter in lieu of brief).

Justice WALLACE, JR., delivered the opinion of the Court.

The issue in this appeal is whether a lender in a foreclosure proceeding is entitled to recover a judgment that is inconsistent with and greater than the amount fixed in a prior Law Division action on the same indebtedness. The trial court answered the question in the affirmative and the Appellate Division affirmed. We hold that to the extent the note and mortgage provide for the

same categories of damages, the amount determined in the first action is binding in the subsequent action. Except for amounts accruing after the first judgment and for different categories of damages, the amount of the judgment entered in each action should be identical.

## I.

On May 4, 2001, the predecessor in interest to First Union National Bank (First Union) provided a commercial loan to Marvin K. Hitchner, Jr. and Penn Salem Marina, Inc. (Penn Salem) in the amount of seven hundred fifty thousand dollars ($750,000). The promissory note was secured in part by a first mortgage on Hitchner's commercial real property, a marina in Pennsville.[1]  The note required the borrower, commencing on July 1, 2001, to pay interest at the rate of thirteen and one-half percent (13.5%) per annum through monthly installments of nine thousand seven hundred thirty-seven dollars and thirty-nine cents ($9737.39).  The note also required payment of the entire remaining principal with all accrued unpaid interest on June 1, 2016.

The mortgage and security agreement, referred to in the documents as the Security Instrument, was fully incorporated into the note by reference and secured the performance of the obligations under the note.  In part, the instrument directed that all of First Union's rights under the instrument "shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others."  Additionally, First Union could recover payment of the debt "in such order and manner as [First Union], in its discretion, may elect."

In the event of a default, at the option of the lender, the note provided that the following would become due and payable:

(i) the whole of the principal sum of this Note, (ii) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the

---

[1] Marvin K. Hitchner III executed a guarantee of the note.  He is not a party to this appeal.

Other Security Documents, (iii) all other monies agreed or provided to be paid by Borrower in this Note, the Security Instrument or the Other Security Documents, (iv) all sums advanced pursuant to the Security Instrument to protect and preserve the Property and any lien and security interest created thereby, and (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt ... or any part thereof[.]

The note further provided for legal fees incurred by First Union in enforcing the note and permitted First Union to recover judgment on the note either before, during, or after any proceedings for the enforcement of the Security Instrument.

In the latter part of 2002, the borrowers failed to make the monthly payments due. In January 2003, First Union declared a default and filed a complaint on the note in the Law Division against defendants Hitchner, Penn Salem, and Hitchner III (Law Division Action). First Union sought the principal and interest accruing on and after November 8, 2002, to the date of the final judgment, post-judgment interest, attorneys' fees, and costs.

Defendants failed to file an answer, and First Union moved for a default judgment. As part of that application, First Union filed the certification of K. Sovic certifying that the amount due and owing to First Union was $833,835.03 as set forth in an attached schedule, together with interest to accrue thereon from August 3, 2003, at the rate of $269.02 per diem, as follows: [2]

| | | |
|---|---|---|
| (A) | Principal | $727,351.32 |
| (B) | Interest from October 1, 2002 to ... 8/2/03 | $ 82,096.02 |
| (C) | Late charges from October 2002 to ... 8/2/03 | $ 8,686.51 |
| (D) | Escrow Advances Taxes | $ 6,042.31 |
| | (i) Hazard Insurance | $ 9,658.87 |
| | (ii) Mortgage Insurance premiums | $ |
| | (iii) Property preservation (repairs, inspections) | $ |

TOTAL AMOUNT DUE FIRST UNION this 02 day of Aug. 2003     $833,835.03

---

[2] Neither the mortgage insurance premiums nor the property preservation line items contained a corresponding monetary amount.

In addition, First Union sought attorneys' fees and costs totaling $11,944.69, for a combined total of $845,779.72.

On August 8, 2003, the trial court in the Law Division Action entered a final judgment by default against Hitchner and Penn Salem in the amount of $845,779.72, and on September 12, 2003, granted First Union's motion for summary judgment against Hitchner III for the same amount. A year later, on September 10, 2004, Hitchner and Penn Salem moved to vacate the judgment against them. The trial court denied the motion and no appeal was taken from that judgment.

Meanwhile, less than a month after filing the Law Division Action, First Union commenced a separate mortgage foreclosure action against the same defendants on February 4, 2003, in the Chancery Division (Foreclosure Action). First Union sought judgment in its favor, fixing the amount due on the note and mortgage, together with interest, post-judgment interest, late charges, advances, attorneys' fees, and costs of suit. In addition, First Union sought to have the property sold to satisfy the amount due.

On November 10, 2003, the Chancery Division entered an order allowing Hitchner and Penn Salem to file a late answer and counterclaim, which defendants did. On February 24, 2004, the Chancery Division granted First Union's motion for summary judgment and remanded the matter to the Foreclosure Unit for processing as an uncontested matter.

On June 24, 2004, First Union moved for entry of final judgment in the Foreclosure Action. First Union submitted the certification of W. Jackson, in which Jackson certified that

[t]here is currently due plaintiff under the Note the principal sum of $727,351.32, plus interest at the rate of 13.5% through January 22, 2004 in the amount of $138,186.75, plus default interest in the amount of $50,914.59, late fees in the sum of $11,607.73, escrow tax advances of $10,416.10, forced insurance in the amount of $3,177.00, property preservation of $5,089.50 and penalties of $36,367.57, plus other costs, as set forth in the Schedule annexed hereto. Interest continues to accrue at a per diem rate of $269.02.

However, the schedule annexed to Jackson's certification summarizing those same amounts contained higher numbers for most of the categories. We set forth below the amounts claimed in the text of Jackson's certification and the amounts claimed in the schedule.

|  | Text | Schedule |
|---|---|---|
| Principal | $727,351.32 | $ 727,351.32 |
| Interest from October 1, 2002 to January 22, 2004 ($367.65 p.d.) | $138,186.75 | $ 167,745.95 |
| Default Interest | $ 50,914.59 | $ 58,541.19 |
| Late charges from October 2002 to [unknown date] | $ 11,607.73 | $ 14,142.08 |
| Escrow Advances/Taxes | $ 10,416.10 | $ 15,095.12 |
| Hazard Insurance | $ 3,177.00 | $ 18,738.87 |
| Mortgage Insurance premiums [3] | $ | $ |
| Property preservation (repairs inspections) | $ 5,089.50 | $ 5,103.00 |
| Prepayment & penalties | $ 36,367.57 | $ 36,367.57 |
| TOTAL AMOUNT DUE FIRST UNION this [unknown date] | $983,110.56 | $1,043,085.10 |
| Per diem from June 16, 2004 | $ 269.02 | $ 367.65 |

Defendants filed late objections to First Union's application, asserting that the amount sought in the Foreclosure Action of $1,043,085 was substantially higher than the final judgment previously entered on the note in the Law Division Action in the amount of $845,779.72. Defendants argued that any final foreclosure judgment should be consistent with the judgment in the Law Division on the underlying debt. The record fails to disclose that any action was taken on those objections.

On January 13, 2005, a final judgment in foreclosure was entered in favor of First Union in the amount of $1,042,111.36, which was comprised of the following:

---

[3] Neither the text of the certification nor the attached schedule contained a corresponding monetary amount for the mortgage insurance premiums line item.

| | |
|---|---|
| Principal | $ 727,351.32 |
| Interest from 10/1/02 to 1/22/04 @ 13.5% | $ 167,745.95 |
| Default Interest | $ 58,541.19 |
| Late Charges | $ 13,168.34 |
| Real Estate Taxes | $ 15,095.12 |
| Forced Place Insurance | $ 18,738.87 |
| Property Preservation | $ 5,103.00 |
| Prepayment Penalties | $ 36,367.57 |
| Total | $1,042,111.36 |

Thus, except for a minor adjustment in the late charges category,[4] the Chancery Division accepted the higher amounts included in the schedule attached to Jackson's certification.

Defendants appealed. The Appellate Division affirmed, finding that "neither res judicata nor collateral estoppel limit the amount of the foreclosure judgment to the amount of the judgment on the note." *First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 383 *N.J.Super.* 562, 569, 893 *A.*2d 1 (App.Div.2006). The panel found that New Jersey jurisprudence treats "a lawsuit to enforce the terms of a note as distinct from a mortgage foreclosure action" because there are different remedies for each action. *Id.* at 571, 893 *A.*2d 1. The panel further rejected defendants' contention that plaintiff waived its right to seek reimbursement for advances made under the mortgage in the Foreclosure Action because it was in a position to seek those same advances in the action on the note and did not. *Id.* at 572, 893 *A.*2d 1. Looking to the Security Instrument, the panel found that plaintiff always had the option to seek the additional charges under the note, which also afforded plaintiff the option of how and in what manner it was to collect the debt in the event of defendants' default. *Id.* at 572–73, 893 *A.*2d 1. The panel concluded that because the two actions are traditionally

---

[4] It appears that the Foreclosure Unit made a $973.74 reduction in the amount of late charges claimed on the schedule attached to the certification. Otherwise, the Chancery Division entered judgment for the amount claimed on the schedule and not the amount claimed in the text of the certification.

construed as separate actions, res judicata did not bar the higher amount in the foreclosure action. *Id.* at 573–74, 893 *A.*2d 1.

We granted Penn Salem's petition for certification. 187 *N.J.* 491, 901 *A.*2d 954 (2006).

## II.

Defendants contend that there is one unitary indebtedness underlying the related actions in the Law Division and the Chancery Division, and therefore, the amount fixed in the first proceeding is res judicata for the amount sought in the subsequent proceeding.

In contrast, plaintiff contends that res judicata is not applicable because an action on a note is entirely separate from a foreclosure action on a mortgage. Further, because the initial judgment was obtained through a default, plaintiff urges that the issues determined in each case were different.

## III.

### A.

In general, when a mortgage is given as security, the underlying debt is evidenced by a bond or a note. When a bond is used, with limited exceptions, no action on the bond may be maintained until after an action to foreclose on the mortgage has occurred. *See N.J.S.A.* 2A:50–2. That same limitation, however, does not always apply when a note, rather than a bond, is used. In *Schwartz v. Bender Investments, Inc.*, we criticized the different treatment between bond-mortgage and note-mortgage holders as "illogical and what is worse, unfair." 58 *N.J.* 444, 448, 279 *A.*2d 100 (1971). Nevertheless, we recognized that any change should be made by the Legislature. *Ibid.*

Eight years later, in 1979, the Legislature amended the statute to eliminate many of the differences between bond and note holders. *See N.J.S.A.* 2A:50–2. Thus, many of the same restric-

tions historically placed on deficiency actions on a bond secured by a mortgage are now applicable to note holders. *See ibid.*; 30A *New Jersey Practice, Law of Mortgages* § 39.1, at 553 (Myron C. Weinstein) (2d ed. 2000). From that point, with certain exceptions, deficiency actions on notes subject to a mortgage were bound by the "foreclosure first" rule.

*N.J.S.A.* 2A:50–2.3 sets forth several exceptions to the foreclosure first rule. *See Bus. Loan Ctr., LLC v. Nischal,* 331 *F.Supp.*2d 301, 309 (D.N.J.2004) (noting exceptions were made "based on efficiency and respect for arms-length business transactions"). Specific to this case, financial institutions granting mortgage loans to businesses involving the financing of business or commercial properties are not required to first foreclose on a mortgage before seeking entry of judgment on a note. *N.J.S.A.* 2A:50–2.3; *Summit Trust v. Willow Bus. Park,* 269 *N.J.Super.* 439, 446, 635 *A.*2d 992 (App.Div.), *certif. denied,* 136 *N.J.* 30, 641 *A.*2d 1041 (1994) (citing *Schwartz, supra,* 58 *N.J.* at 449, 279 *A.*2d 100; *Lenape State Bank v. Winslow Corp.,* 216 *N.J.Super.* 115, 132, 523 *A.*2d 223 (App.Div.1987); *Cent. Penn Nat'l Bank v. Stonebridge, Ltd.,* 185 *N.J.Super.* 289, 305, 448 *A.*2d 498 (Ch.Div. 1982)).

■ When a bond and mortgage are used, the judgment in the foreclosure action is res judicata on a subsequent action on the bond. *See Ledden v. Ehnes,* 22 *N.J.* 501, 508–09, 126 *A.*2d 633 (1956) (stating that foreclosure judgment on bond is res judicata "as to the *quantum* of the debt") (quoting *Montclair Sav. Bank v. Sylvester,* 122 *N.J. Eq.* 518, 524–26, 194 *A.* 811 (E. & A.1937)). We have not had occasion to decide whether that same determination of the quantum of the debt applies when a note and mortgage are at issue. This case presents such an occasion.

### B.

Defendants essentially contend that the first judgment entered should be res judicata in any subsequent action. Because there are some important differences between a foreclosure action and

an action on the note, we view defendant's argument as one of collateral estoppel or issue preclusion rather than res judicata. Issue preclusion requires a similar, yet less demanding, analysis than res judicata or claim preclusion. *See Pittman v. LaFontaine,* 756 *F.Supp.* 834, 841 (D.N.J.1991) (stating in comparison to claim preclusion requirements, "[i]ssue preclusion, on the other hand, requires only that an issue of fact or law be determined in a valid proceeding and that final judgment on that issue was necessary to the decision.").

The doctrines of collateral estoppel, issue preclusion, res judicata, and the like serve the important policy goals of "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness[.]" *Hackensack v. Winner,* 82 *N.J.* 1, 32–33, 410 *A.*2d 1146 (1980). If an issue between the parties was fairly litigated and determined, it should not be relitigated.

Recently, in *Hennessey v. Winslow Township,* 183 *N.J.* 593, 875 *A.*2d 240 (2005), we outlined the requirements to foreclose relitigation of an issue. We explained that "the party asserting the bar" must show that:

(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[*Id.* at 599, 875 *A.*2d 240 (quoting *In re Estate of Dawson,* 136 *N.J.* 1, 20–21, 641 *A.*2d 1026 (1994)) (citations omitted).]

## C.

We apply those factors to this matter. The first factor requires that the issues be identical. We have noted that the test for the "identity of a cause of action for claim preclusion purposes is not simple." *Culver v. Ins. Co. of N. Am.,* 115 *N.J.* 451, 461, 559

A.2d 400 (1989). We explained in *Culver* that in considering this factor, the court must determine

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.
>
> [*Id.* at 461–62, 559 A.2d 400 (quoting *United States v. Athlone Indus. Inc.*, 746 F.2d 977, 984 (3d Cir.1984)) (citations omitted).]

In deciding the similarity of issues for issue preclusion purposes, a court should consider whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related. *See Restatement (Second) of Judgments* § 27 comment c (1982); *see also In re Estate of Dawson, supra,* 136 *N.J.* at 21, 641 A.2d 1026 (finding issues concerning similar stock distributions, but from different corporations, were not identical for issue preclusion purposes).

Here, there is a high degree of similarity between the two actions. The act complained of, defendants' failure to pay the note when due, is the same in both actions, and the same evidence is necessary to establish the failure to pay and the amount claimed due. Although the demand for relief is broader in the Foreclosure Action in that plaintiff also sought to foreclose on the property securing the underlying indebtedness, the other elements of relief are essentially the same. In the Law Division Action, plaintiff demanded recovery of the amount due on the note, additional interest until final judgment, and post-judgment interest in its complaint, and advances for taxes and insurance in its certification. Similarly, in the Foreclosure Action, plaintiff demanded that the court fix the amount due, require plaintiff "be paid the amount due ... as provided in the Note and Mortgage, together with interest, late charges, advances, attorneys['] fees, and costs of

suit," and adjudge that the security be sold to satisfy the amount due to plaintiff.

In sum, the two complaints contained virtually the same categories of damages. The primary differences were that in the Foreclosure Action, plaintiff sought additional items of damages it did not seek in the Law Division Action—the equitable remedy of the forced sale of the collateral and the legal remedies of default interest and prepayment penalties—something plaintiff was authorized to do pursuant to the terms of the mortgage and note. We have emphasized that "[t]o characterize the claims brought in the subsequent lawsuit as 'equitable,' and those in the earlier action as 'legal' in no way displaces the bar of res judicata." Culver, supra, 115 N.J. at 464, 559 A.2d 400 (citation omitted). That same admonition applies equally to issue preclusion. Thus, for purposes underlying issue preclusion, the damages issues are sufficiently similar to satisfy this factor. However, because the loan document did not require all categories of damages to be claimed at the same time, we limit this factor to only the categories of damages in fact claimed in the Law Division Action.

The next two factors address whether the issues were actually litigated and whether a final judgment was entered. Although judgment was entered by default in the first action, defendants had ample opportunity to contest the complaint. Moreover, it is defendants who are seeking to apply issue preclusion, not plaintiff who obtained the default judgment. When defendants do not claim prejudice as a result of a default judgment, there is no justification to give weight to that factor. It is also obvious that a final judgment was entered in the Law Division Action. In short, we find that the factors requiring that the issues actually be litigated and a final judgment be entered were either given no weight or satisfied.

The next requirement is that the determination of the amount of damages was essential in the first action. Clearly, the amount due on the note was essential to the entry of judgment in the Law Division Action. The note and mortgage incorporated each oth-

er's terms and provided for damages in addition to the principal and interest. To the extent plaintiff asserted a category of damages in the Law Division Action on the note, that category is deemed essential.

Lastly, it is not disputed that the parties are the same in both actions. Thus, the privity requirement is met.

Based on our review of the above factors, we conclude that the requirements for the application of issue preclusion are satisfied. Therefore, for identical time periods, issue preclusion requires that the amount claimed in each category of damages in the Law Division Action must be the same as the amount claimed in that same category of damages in the Foreclosure Action.

To be sure, the remedies in the note and mortgage were cumulative. We agree with the observation by the Appellate Division that the documents provide plaintiff the option of how and in what manner it would seek to collect the debt in the event of default. *First Union, supra,* 383 *N.J.Super.* at 573, 893 *A.*2d 1. That is, the agreement authorized plaintiff to claim different categories of damages in the note and in the mortgage, but did not require it. But, to the extent plaintiff sought a particular category of damages in the Law Division Action, such as per diem interest, the determination of that amount in the first action is binding in the subsequent action. Of course, that admonition does not pertain to any category of damages not asserted in the Law Division Action or damages that accrued after the date of the first judgment.

In short, the application of issue preclusion does not prohibit a lender from recovering advances, interest, costs, attorneys' fees, and the like that accrue after the date of the first judgment. Similarly, because the note and the mortgage permitted the lender to claim different categories of damages, issue preclusion does not bar plaintiff's claim for a category of damages that was not sought in the Law Division Action.

### D.

In sum, we hold that when there is an action on the note followed by an action to foreclose on the security, the trial court in the second action should be bound by the judgment entered in the first action to the extent the same categories of damages are claimed in the second action as in the first. In this instance, issue preclusion requires that both judgments contain the same amounts for those categories of damages that cover the same period of time.

For example, here, the outstanding principal and the rate of interest claimed in both actions are the same, as issue preclusion requires. However, the Law Division Action contained a per diem interest rate of $269.02, while the judgment in the Foreclosure Action contained a per diem rate of $367.65. When the note and the mortgage provide for an identical per diem rate, issue preclusion requires that the per diem rate should be the same in both actions. It was error to use the per diem rate of $367.65 in the Foreclosure Action. In contrast, because plaintiff did not claim default interest and prepayment penalties in the Law Division Action, which is consistent with the authorization in the documents, issue preclusion will not bar those categories of damages in the Foreclosure Action.

### IV.

As noted above there were several internal discrepancies in Jackson's certification and schedule concerning the amounts due in the separate categories of damages. Under our Court Rules, the Office of Foreclosure is responsible for recommending the entry of "judgments in uncontested foreclosure matters ... subject to the approval of a Superior Court Judge designated by the Chief Justice." *R.* 1:34–6. If this matter had remained uncontested, the Office of Foreclosure should have discovered the internal errors in Jackson's certification and sought clarification. The Office of Foreclosure should have either notified plaintiff to submit a corrected certification or returned the matter to the Chancery

Division. In either event, plaintiff should have been required to submit a corrected certification. Because, this matter was ultimately contested, and the amounts included in the judgment were disputed, the Office of Foreclosure should have returned the matter to the trial court for resolution.

## V.

We reverse the judgment of the Appellate Division and remand the matter to the Chancery Division for further proceedings consistent with the views expressed herein.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—6.

Opposed—None.