**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3722
_____

RADUL RADOVICH; SILVER MOUNTAIN PROMOTIONS, INC;
ST.  PETKA TRUST; R AND R HOLDINGS,
                                                    Appellants

v.

L.P.  YA GLOBAL INVESTMENTS, L.P., a Delaware limited Partnership,
f/k/a Cornell Capital Partners, L.P.; YORKVILLE ADVISORS, LLC,
A Delaware limited liability company; YORKVILLE ADVISORS GP, LLC;
MARK ANGELO; DAVID GONZALEZ; CRAIG ENGLER
_____

On Appeal from the United States District Court
for the District of New Jersey
(No. 2:12-cv-06723)
District Judge:  Hon. Dennis M. Cavanaugh

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 22, 2014

Before:  McKEE, Chief Judge, CHAGARES, and GARTH, Circuit Judges.

(Filed: June 20, 2014)

_____

OPINION
_____

CHAGARES, Circuit Judge.

Radul Radovich and several entities he controls appeal the District Court's dismissal of his complaint on res judicata grounds. For the following reasons, we will affirm.

I.

Because we write solely for the benefit of the parties, we recount only the facts relevant to our disposition. Radovich and entities he controls[1] owned a substantial amount of shares in a pharmaceutical corporation called Cobalis. Radovich was also the chairman of its board. Cobalis's shares were publicly traded on domestic over-the-counter markets. Cobalis needed money to help finance its operations and product development. It reached out to YA Global Investments, L.P. ("YAGI"), formerly known as Cornell Capital Partners, L.P., a hedge fund that specialized in making private investments in public equity ("PIPE transactions").[2] Radovich's son, Chaslav Radovich, who was Cobalis's president, began negotiating on behalf of Cobalis and Radovich, and according to the complaint "was at all times acting as agent for the Plaintiffs." Appendix ("App.") 363.

---

[1] The entities he controls are plaintiffs in this action: Silver Mountain Promotions, Inc., St. Petka Trust, and R and R Holdings. Because Radovich owns and controls all of these entities, this opinion will sometimes refer to the plaintiffs simply as "Radovich."

[2] All of the other defendants were associated with YAGI and are defending this action collectively. Yorkville Advisors G.P, L.L.C. was its general partner; Yorkville Advisors, L.L.C. was a "financial advisor for the financing clients of YAGI" (App. 361); Mark Angelo was the founder, president and majority owner of YAGI and the Yorkville entities; and David Gonzalez and Craig Engler were employees of YAGI.

2

Chaslav Radovich and YAGI agreed to terms and entered into a "structured" PIPE transaction on December 20, 2006. YAGI agreed to lend $3.85 million to Cobalis in the form of debentures that could convert to shares if certain conditions came to pass. YAGI's loan was convertible into common shares at a conversion price that automatically adjusted downward should Cobalis's share price fall. As collateral for the loan, Radovich agreed to place 8.4 million of his Cobalis shares in an escrow account with defendant David Gonzalez as the escrow agent. These shares were secured by a Pledge and Escrow Agreement, which allowed for the transfer of these shares to YAGI if Cobalis suffered an "event of default." App. 81-83. The Pledge and Escrow Agreement was signed by Radovich, Mark Angelo on behalf of YAGI, Chaslav Radovich on behalf of Cobalis, and David Gonzalez as the escrow agent.

Radovich claims that the structure of the PIPE transaction concerned him because it gave YAGI a "strong incentive" to sell shares of Cobalis short, thereby driving down their market price, reducing the price at which YAGI could convert its loan into shares, and ultimately leaving it with more shares. App. 363. To assuage his concerns, he contends that YAGI made numerous assurances — mostly oral, but at least one written — that YAGI would not "engage in transactions that would have the effect or potential to depress the price of Cobalis stock." App. 366. Despite these assurances, Radovich claims that YAGI shorted Cobalis stock, thereby driving down its price and preventing Cobalis from raising additional money through share sales.

At some point between April and July 2007, YAGI also became aware that a third party obtained a judgment against Cobalis in an unrelated matter and attempted to

3

enforce it against Cobalis. YAGI allegedly considered this an event of default and Radovich's shares were "wrongfully released" from escrow. App. 374.

Cobalis's business failed and YAGI filed an involuntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Central District of California against Cobalis on August 1, 2007. By this point, Cobalis's share price had declined from $0.75 per share at the time that the PIPE transaction closed to about $0.05 per share. Although the bankruptcy was ultimately converted into a voluntary Chapter 11 case, conflicts abounded between Cobalis, who remained a debtor-in-possession, and YAGI. On November 9, 2009, while still in bankruptcy, Cobalis filed an adversary complaint in the bankruptcy court against YAGI seeking to void all of the documents associated with the PIPE transaction (the "Bankruptcy Adversary Action"). Cobalis claimed that YAGI breached oral and written assurances that it would not short Cobalis shares and that by shorting Cobalis shares, YAGI drove down their price and prevented Cobalis from raising additional money in the stock market. It also claimed that YAGI committed securities fraud by deceiving Radovich and Chaslav Radovich into entering into the transaction. App. 189. It sought "rescission of all of the Transaction Documents" that comprised the PIPE transaction (defined to include, inter alia, the Pledge and Escrow Agreement). App. 183.

The bankruptcy court dismissed Cobalis's complaint. Cobalis then amended its complaint in the bankruptcy court four times, and each time the bankruptcy judge again dismissed it. In its fifth complaint, Cobalis specifically alleged not only that YAGI breached promises to not short Cobalis stock, but that it "wrongfully became beneficial

4

owners of the 8.4 million shares" in escrow. App. 327. Part of its final order dismissing the fifth complaint with prejudice specifically addressed the Pledge and Escrow Agreement, rejecting the notions that YAGI wrongfully became the beneficial owners of the 8.4 million shares in escrow, and that YAGI had broken any promises or breached any of the transaction documents. App. 350-51. Cobalis did not appeal the dismissal.

Before the ink on the bankruptcy judge's final dismissal was dry, Cobalis brought an action in the District of New Jersey on August 18, 2011 relating to the same events as the Bankruptcy Adversary Action and seeking a temporary restraining order ("TRO") that would enjoin YAGI from exercising rights that it had under the transaction documents. The complaint in this first District Court of New Jersey action again recounted the history behind the PIPE transaction, defined the relevant transaction documents to include the Pledge and Escrow Agreement, and sought "Rescission Of All Instruments." App. 415. The district court denied Cobalis's TRO application, largely because Cobalis could not overcome res judicata, and thus could not show a likelihood of success on the merits. It then dismissed the action, and Cobalis again did not appeal.

Instead, Radovich and several entities under his control brought the instant action on October 25, 2012. Its allegations mimic those made in the Bankruptcy Adversary Action (that were largely repeated in the first New Jersey action). The complaint recounts the history of Cobalis's PIPE transaction and then alleges that Radovich was fraudulently induced into signing the Pledge and Escrow Agreement, that YAGI broke its oral assurances that it would not short Cobalis shares, and that YAGI misappropriated the 8.4 million shares that Radovich put in escrow.

The District Court again dismissed the instant action on <u>res judicata</u> grounds. It held that Radovich was relying on the same underlying events, facts, and theories, as Cobalis did in the Bankruptcy Adversary Action. It further held that the disposition of the Bankruptcy Adversary Action bound Radovich (who admittedly was not a party to it) because he was in privity with Cobalis. That Chaslav Radovich was Radovich's agent in negotiating the PIPE transaction, Radovich owned a substantial block of Cobalis shares, and Radovich was Cobalis's chairman created a sufficient identification of interests for <u>res judicata</u> purposes. Radovich timely appealed.

## II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over the final decision of the District Court pursuant to 28 U.S.C. § 1291. Our review of the District Court's application of <u>res judicata</u> is plenary. <u>Elkadrawy v. Vanguard Grp., Inc.</u>, 584 F.3d 169, 172 (3d Cir. 2009).

## III.

The District Court applied New Jersey claim preclusion law. Although neither party contests this decision, we are not entirely convinced. "The preclusive effect of federal-court judgment is determined by federal common law." <u>Semtek Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 507-08 (2001). For federal court judgments in suits based on diversity jurisdiction, federal law requires us to look to the rules of preclusion of the state where the court that rendered the first judgment sat. <u>Id.</u> at 508. The bankruptcy court used New Jersey substantive law (as required by the transaction documents) to resolve the breach of contract-based allegations, making New Jersey

6

preclusion law not an unreasonable choice. But the bankruptcy court was not exercising diversity jurisdiction (it had jurisdiction over the complaint pursuant to 28 U.S.C. § 1334 because it was "related to" Cobalis's bankruptcy) and resolved questions of federal law (federal securities fraud) as well. This implicates the traditional rule that the preclusive effect of a federal court's judgment is determined by federal res judicata principles. See Taylor v. Sturgell, 553 U.S. 880, 891 (2008).[3]

We need not resolve this interesting question in order to resolve this appeal, because under either New Jersey or federal preclusion law, our answer will be the same. "Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (quotation marks omitted). Although the elements of claim preclusion are the same, their precise contours slightly vary. When they do, we will apply the stricter set of preclusion principles.

It is undisputed that the bankruptcy court's dismissal of the Bankruptcy Adversary Action constitutes a final judgment on the merits. The plaintiffs contend only that they

---

[3] Courts are divided on whether to apply federal or state preclusion principles when considering the effect of a judgment of a federal bankruptcy court sitting in "related to" jurisdiction under 28 U.S.C. § 1334. Compare Higgins v. NMI Enterprises, Inc., No. 09-6594, 2012 WL 5997951 (E.D. La. Nov. 30, 2012) (federal preclusion principles apply); Boyer v. Gildea, No. 05-CV-129-TS, 2005 WL 2648673 (N.D. Ind. Oct. 17, 2005) (federal preclusion principles apply); with In re Cass, 476 B.R. 602, 609 (Bankr. C.D. Cal. 2012), aff'd, BAP No. CC-12-1513, 2013 WL 1459272 (B.A.P. 9th Cir. Apr. 11, 2013) (state preclusion principles apply).

were not in privity with Cobalis and that this suit is not based on the same cause of action. We find neither argument persuasive.

## A.

We turn first to privity. Under New Jersey law, the concept of privity is "necessarily imprecise." Zirger v. Gen. Accid. Ins. Co., 676 A.2d 1065, 1071 (N.J. 1996). "It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Allen v. V & A Bros., Inc., 26 A.3d 430, 445 (N.J. 2011) (alteration and quotation marks omitted). A relationship is considered "close enough only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." Id.

Under federal law, the general rule against non-party preclusion is stricter. The Supreme Court has definitively rejected the "virtual representation" standard that New Jersey still recognizes. See Taylor, 553 U.S. at 904. Instead, the Supreme Court has stated a general rule that non-parties are not bound by prior judgments, and then carved out a number of exceptions. Id. at 892-95. Because the scope of non-party preclusion under federal law is narrower, a non-party precluded under federal law will also be precluded under New Jersey law.

Two of the carefully delineated exceptions that the Supreme Court has recognized apply to Radovich. First, Radovich had several "pre-existing substantive legal relationships" with Cobalis. Id. at 894 (quotation marks and alteration omitted). At the time that Cobalis filed the Bankruptcy Adversary Action, Radovich was the chairman of

8

its board. Cobalis repeatedly admitted this in successive filings in the bankruptcy court. Further, under the Pledge and Escrow Agreement, Radovich and entities under his control pledged their shares as security for Cobalis, making Radovich a pledgor and Cobalis a beneficiary. These preexisting substantive legal relationships sufficiently aligned Radovich's interest with Cobalis's so as to justify binding Radovich by the outcome of the Bankruptcy Adversary Action.

Second, Radovich was "adequately represented" by Cobalis in the prior litigation. Id. "Representative suits with preclusive effect on nonparties include . . . suits brought by trustees, guardians, and other fiduciaries." Id. Cobalis undertook the Bankruptcy Adversary Action as a debtor-in-possession. A debtor-in-possession is a fiduciary of its creditors and shareholders. See, e.g., In re Marvel Ent. Grp., Inc., 140 F.3d 463, 471 (3d Cir. 1998); see also Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 355 (1985). Filings in Cobalis's bankruptcy indicate that Radovich, in addition to being Cobalis's chairman and dominant shareholder, was also creditor. See, e.g., Exhibit B-5 to Joint Disclosure Statement Describing the Debtor's Plan and YA Global's Plan of November 9, 2009, ECF No. 268-7 in No. 8:07:1234-TA (the bankruptcy proceeding). This relationship is itself sufficient to preclude Radovich from relitigating claims that Cobalis asserted in the Bankruptcy Adversary Action. Cobalis's goals in the Bankruptcy Adversary Action were "squarely aligned," Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 313 (3d Cir. 2009), with Radovich's: void the transaction documents, including the Pledge and Escrow Agreement, and recover damages.

B.

The District Court also properly held that this suit is based on the same cause of action as the Bankruptcy Adversary Action. "For the purposes of res judicata, causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence." Watkins v. Resorts Int'l Hotel & Casino, Inc., 591 A.2d 592, 599 (N.J. 1991). Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." McNeil v. Legislative Apportionment Comm'n of State, 828 A.2d 840, 859 (N.J. 2003) (quotation marks omitted). We must look at whether the acts complained of, the theory of recovery, the necessary witnesses and documents, and the material facts alleged are the same. First Union Nat. Bank v. Penn Salem Marina, Inc., 921 A.2d 417, 424 (N.J. 2007).[4]

We have little difficulty concluding that this action arises out of the same transaction or occurrence as the Bankruptcy Adversary Action. This case arises out of events surrounding the exact same PIPE transaction. Radovich's claims are substantially the same as those asserted in the Bankruptcy Adversary Action: that the defendants breached representations they made to Radovich and Cobalis that fraudulently induced them into signing the transaction documents, then maliciously sold Cobalis shares to drive down their price and wrongfully became beneficial owners of 8.4 million shares that Radovich had pledged as collateral. This action seeks rescission of the Pledge and Escrow Agreement, one of the very same transaction documents that Cobalis sought rescission of in the Bankruptcy Adversary Action. Indeed, many of the paragraphs in the

---

[4] The contours of federal common law are not different in any material respect. See Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs, 726 F.3d 387, 394-95 (3d Cir. 2013) (describing the federal standard).

10

instant complaint have been lifted verbatim from the complaints in the Bankruptcy

Adversary Action.

IV.

For the forgoing reasons, we will affirm the order of the District Court dismissing

the plaintiffs' complaint.

11