**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4443-14T4

AHS HOSPITAL CORPORATION,

    Plaintiff-Appellant,

v.

MAINARDI MANAGEMENT
COMPANY, LP and UNION
MEDICAL PARK, LLC,

    Defendants-Respondents.

_____

Argued January 24, 2017 — Decided July 14, 2017

Before Judges Espinosa and Guadagno.

On appeal from the Superior Court of New
Jersey, Law Division, Morris County, Docket
No. L-1407-14.

Katelyn E. Cutinello argued the cause for
appellant (Bubb, Grogan & Cocca, LLP,
attorneys; Ms. Cutinello, of counsel and on
the briefs).

Michael J. Palma argued the cause for
respondents (Law Offices of Viscomi & Lyons,
attorneys; Mr. Palma, on the brief).

PER CURIAM

    Plaintiff AHS Hospital Corporation (AHS) appeals from the

dismissal of a complaint it filed in Morris County to seek indemnification and defense costs incurred in an action filed, settled and dismissed in Essex County. For the reasons that follow, we affirm.

I.

AHS leased premises from defendant Union Medical Park, LLC (Union) pursuant to a lease agreement in which Union agreed to indemnify and defend AHS against personal injury claims "occasioned wholly or in part by any act or omission of" Union or its agents. In the underlying slip and fall lawsuit filed against them in Essex County, Rodriguez v. Mainardi Management, Co., L.P., et al., No. ESX-L-3914-11,[1] AHS and Union asserted cross-claims against each other. AHS sought contribution, indemnification generally and specifically pursuant to the lease agreement, as well as a judgment for attorneys' fees and defense costs it would incur in the Rodriguez lawsuit.

The Rodriguez action was submitted to non-binding arbitration in April 2013, resulting in the following: (1) Rodriguez's damages were assessed at $20,000, not including $6,123.44 for medical expenses, (2) Rodriguez was found fifty percent (50%) at fault; (3) Mainardi was found fifty percent (50%) at fault; and (4) no

---

[1] It was alleged in the Rodriguez complaint that defendant Mainardi Management Company is Union's management company.

fault was found as to AHS and Union. AHS notified defendants of its intent to seek indemnification pursuant to the lease in the event the Rodriguez action proceeded to trial. The Rodriguez action settled for $13,000, an amount paid entirely by defendants' insurance carrier.

Within days of the settlement, the trial judge in Essex County entered an order stating the Rodriguez action was settled. The order is silent as to the cross-claims filed by AHS and defendants against each other.

In October 2013, defendants moved to reinstate their cross-claims against AHS. AHS did not file a similar motion to seek such relief. It subsequently opposed defendants' motion and cross-moved for attorneys' fees and costs on the basis that, under the relevant lease provisions, defendants were responsible for the condition which caused Rodriguez's slip-and-fall and were required to indemnify and defend AHS in the Rodriguez action.

A voluntary stipulation of dismissal with prejudice was filed that dismissed Rodriguez's claims but maintained defendants' cross-claims against AHS. The stipulation, which was silent as to AHS's claims against defendants, was executed by Rodriguez and defendants but not by AHS.

Following oral argument on defendants' motion and AHS's cross-motion, the Essex County trial judge denied both motions by

orders dated December 6, 2013. The order on defendants' motion denied their request to reinstate their cross-claims with prejudice. The order denying AHS's motion for attorneys' fees and costs did not specify that it was entered with prejudice. AHS did not move for reconsideration or file a notice of appeal from this order.

Approximately six months later, AHS filed the instant suit in Morris County (the AHS suit). AHS alleged breach of contract, contractual and common law indemnification claims, specifically seeking reimbursement for attorneys' fees and costs incurred as a result of the Rodriquez action. Defendants filed an answer, denying the allegations.

Defendants moved to dismiss AHS's complaint as barred by the December 6, 2013 order in the Rodriquez action under the entire controversy doctrine and res judicata. In response, AHS argued that the entire controversy doctrine did not bar its complaint because the claims it raised in the AHS suit were not addressed on their merits and had not accrued at the time of the Rodriquez action. AHS also argued that res judicata did not bar its complaint because (1) the December 6, 2013 decision in the Rodriquez action did not address the merits of its claims and was not made with prejudice; (2) there was no identity of issues or cause of action between the Rodriquez action and the AHS suit; and

(3) defendants were not prejudiced by the filing of the AHS suit.

Following oral argument, the trial judge in Morris County entered an order dismissing AHS's complaint with prejudice. The judge recognized that the December 6, 2013 decision was not made on "a motion to reinstate [AHS's] cross claim" and the record was sparse regarding the Essex County judge's consideration of AHS's motion for attorney's fees. Still, he reasoned it could be inferred that the Essex County trial judge had considered reinstating AHS's cross-claim and therefore, the decision should be viewed as one on the merits, warranting the application of res judicata to bar the AHS suit in Morris County.

In its appeal, AHS argues the trial court erred in dismissing its complaint on res judicata grounds because: the trial judge in Essex County did not enter a final judgment on the merits of the claims AHS presented in the instant suit; its claims against defendant had not accrued; there was no identity of issues, claims and causes of action in the Rodriquez action and equity requires that its contractual and indemnity claims be heard fully and fairly on the merits. AHS also argues its claims are not barred by the entire controversy doctrine because there was no ruling on the merits of its claims against defendants in the Rodriquez action.

We agree with AHS that it was error to apply the doctrine of res judicata to dismiss the instant lawsuit. However, "appeals

are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion."  Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001).  Our review of legal questions, such as the application of res judicata, collateral estoppel and the entire controversy doctrine, is de novo.  Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 386 (2007).  Because our review of the record supports the dismissal of AHS's complaint under both collateral estoppel and the entire controversy doctrine, we affirm.

## II.

Res judicata, or claim preclusion, embodies "the principle that public policy and welfare require a definite end to litigation when each of the parties has had a full, free and untrammeled opportunity of presenting all of the facts pertinent to the controversy."  McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 399-400 (2003) (citation omitted), cert. denied, 540 U.S. 1107, 124 S. Ct. 1068, 157 L. Ed. 2d 893 (2004).  By barring subsequent litigation, this doctrine "insulates courts from the inefficiency of relitigating claims that have already been resolved, thereby protecting the integrity of judgments and preventing the harassment of parties."  Bondi v. Citigroup, Inc., 423 N.J. Super. 377, 422 (App. Div. 2011), certif. denied, 210

<u>N.J.</u> 478 (2012).

There are three requirements that must be satisfied for res judicata to apply:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.
>
> [<u>Ibid.</u> (quoting <u>Watkins v. Resorts Int'l Hotel & Casino</u>, 124 <u>N.J.</u> 398, 412 (1991)).]

The first of these criteria is not satisfied here. The December 6, 2013 order and the reasoning proffered in the judge's oral decision did not address the merits of AHS's cross-claims. Procedurally, AHS's cross-claims were dismissed by virtue of the order that dismissed the <u>Rodriguez</u> action. AHS had not filed a motion to reinstate its cross-claim or a motion for reconsideration of the June 17, 2013 dismissal order pursuant to <u>Rule</u> 4:49-2. It was perhaps not unreasonable for the trial judge in Morris County to infer that the Essex County judge had considered the merits of reinstating AHS's cross-claim when he denied the cross-motion for attorneys' fees. However, in the absence of such a motion or any identifiable statement in the record to support that inference, we are constrained to conclude that the inference is based upon speculation rather than upon a record that reveals AHS had a full

and fair hearing on its cross-claims prior to the December 6, 2013 order. See also Walker v. Choudhary, 425 N.J. Super. 135, 154 (App. Div.), certif. denied, 211 N.J. 274 (2012). It was, therefore, error to apply the doctrine of res judicata here.

### III.

The corollary of res judicata — which bars the relitigation of a claim — is collateral estoppel, which bars the relitigation of an issue. Unlike res judicata, "issue preclusion can result from a judgment even if that judgment was not rendered on the merits." Watkins, supra, 124 N.J. at 422. Collateral estoppel bars the relitigation of an issue that has been adjudicated in a prior litigation if:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Bondi, supra, 423 N.J. Super. at 423 (quoting First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007)).]

Under the first prong, determining whether the issues are identical requires consideration of

> [1] whether there is substantial overlap of evidence or argument in the second proceeding;

[2] whether the evidence involves application of the same rule of law; [3] whether discovery in the first proceeding could have encompassed discovery in the second; and [4] whether the claims asserted in the two actions are closely related.

[First Union Nat'l Bank, supra, 190 N.J. at 353.]

AHS's cross-motion for attorneys' fees and costs in the Rodriguez action raised two main arguments: (1) pursuant to section 7.01(a) of the lease,[2] defendants were responsible for the condition that led to Rodriguez's injury, and (2) pursuant to Section 8.05(b) of the Lease,[3] defendants were required to

---

[2] Section 7.01(a) of the lease, "Responsibilities of Landlord," provides, in relevant part:

> [Union] agrees, at no additional cost to [plaintiff], to repair, maintain and, if necessary, replace: (i) the Common Areas, including, without limitation, cleaning and sweeping the Common Areas . . . and the common utility systems (including plumbing, electricity and lighting) serving the Common Areas, . . . and personnel to provide and supervise such services, and (ii) . . . and all operating systems serving HEALTH PARK (as opposed to solely the Leased Premises), including . . . plumbing . . . .

[3] Section 8.05(b) of the lease, "Indemnification," provides:

> [Union] shall indemnify, defend and save [plaintiff] harmless from and against any and all claims, actions, damages, liability and expense in connection with . . . personal injury . . . arising from or out of any

indemnify and defend AHS in the <u>Rodriguez</u> action, thereby making them liable for AHS's attorneys' fees and costs. In support, AHS cited the deposition testimony of Rodriguez and a Mainardi representative as well as the lease. The claims AHS alleged in the instant suit essentially rely upon the same arguments, evidence, and rule of law. Although the breach of contract claim additionally requires a determination that defendants breached the lease by causing the condition that led to Rodriguez's injury and refusing to indemnify or defend AHS in the <u>Rodriguez</u> action, it seeks the same relief pursuant to the same lease provision as AHS's cross-motion in the <u>Rodriguez</u> action. Thus, the cross-motion in the <u>Rodriguez</u> action and the claims in the <u>AHS</u> suit implicate identical issues.

Under the second prong, an issue is "actually litigated" if "there was a full and fair opportunity to litigate the issue" in the prior suit. <u>Perez v. Rent-A-Ctr., Inc.</u>, 186 <u>N.J.</u> 188, 199 (2006) (citation omitted), <u>cert. denied</u>, 549 <u>U.S.</u> 1115, 127 <u>S. Ct.</u>

---

occurrence in, upon or at the Property (excluding the Leased Premises), or occasioned wholly or in part by any act or omission of [Union], its agents, contractors, employees, servants, lessees or concessionaires, unless caused by the gross negligence or willful misconduct of [plaintiff] or its agents or servants.

984, 166 L. Ed. 2d 710 (2007).  In other words, an issue that "is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined" is considered to be "actually litigated."  Allesandra v. Gross, 187 N.J. Super. 96, 105-06 (App. Div. 1982) (citation omitted).  By contrast, an issue was not found to be "actually litigated" where, although it was raised, "[n]o testimony was taken or evidence offered in the [prior] proceeding on this issue and no decision with respect thereto was ever rendered by the [prior] judge."  Id. at 106-07.

The very cross-motion filed by AHS in the Rodriquez action raised the issues regarding the application of the lease provisions to the Rodriquez action, i.e., whether defendants were responsible for Rodriguez's injury; whether defendants were required to indemnify and defend AHS in the Rodriquez action, and whether they were required to reimburse AHS for incurred attorneys' fees and costs.  AHS deposed Carleen Evans, Building Supervisor for Mainardi Management Company and Union, on these issues, relied upon that discovery and litigated these issues in a letter brief and at oral argument.  The oral decision and December 6, 2013 order constituted determinations of the issues raised by AHS.

Under the third prong, collateral estoppel's finality requirement "is 'less stringent' than the finality requirement for res judicata."  In re Liquidation of Integrity Ins. Co./Celotex

Asbestos Tr., 214 N.J. 51, 68 (2013) (citation omitted). "[C]ollateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'" Hills Dev. Co. v. Township of Bernards, 103 N.J. 1, 59 (1986) (quoting Restatement (Second) of Judgments § 13 (1982)). On the other hand, "preclusion should be refused if the decision was avowedly tentative." Restatement (Second) of Judgments § 13 comment g (1982). "[T]hat the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." Ibid.

The December 6, 2013 order does not suffer from ambiguity as to whether AHS's motions were denied. It cannot be denied that the oral decision supporting the December 6, 2013 order lacked a clear statement of reasons as required by Rule 1:7-4. That deficiency does not, however, preclude a finding that the finality prong has been satisfied. AHS had the opportunity to file a motion for clarification or reconsideration and certainly had the right to appeal from the order, all options it elected not to pursue. "Correcting flawed reasoning is the subject of direct appeals, and collateral attacks which 'undercut the decisional process' are prohibited." Velasquez v. Franz, 123 N.J. 498, 512 (1991) (quoting

12

Restatement (Second) of Judgments § 71 comment e (1982)).

There is no real dispute that the fourth and fifth prongs are satisfied. Clearly, the determination of whether the lease held defendants responsible for causing Rodriguez's injury and required defendants to indemnify and defend AHS in the Rodriguez action was essential to AHS's cross-motion in the Rodriguez action seeking attorneys' fees and costs pursuant to the lease. Similarly, it is clear that AHS, the party collateral estoppel is asserted against in the AHS Suit, was a party in the Rodriguez action.

However, "because it is an equitable doctrine, even if all five elements coalesce, it 'will not be applied when it is unfair to do so.'" Allen v. V & A Bros., Inc., 208 N.J. 114, 138 (2011) (quoting Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521–22 (2006)). Courts consider the following factors in making a fairness determination:

> The factors favoring issue preclusion include: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency. Those factors disfavoring preclusion include: the party against whom preclusion is sought could not have obtained review of the prior judgment; the quality or extent of the procedures in the two actions is different; it was not foreseeable at the time of the prior action that the issue would arise in subsequent litigation; and the precluded party did not have an adequate opportunity to obtain a full and fair adjudication in the prior action.

13

[Olivieri, supra, 186 N.J. at 523 (citation omitted).]

There are no factors that militate against the application of collateral estoppel here. There was no obstacle to a review of the December 6, 2013 decision, either by a motion for reconsideration or direct appeal. It was not merely foreseeable but apparent by the assertion of the cross-claims in the Rodriquez action that AHS was aware of the issues raised by the lease provisions. Because both suits were brought in Superior Court, there was no difference in procedures that precluded AHS from obtaining full relief in the Rodriquez action. In short, there was nothing in the procedures that denied AHS a full and fair adjudication of its claims in the Rodriquez action.

The factors favoring the application of collateral estoppel are prevalent. Because the issues implicated in both suits are identical, allowing the AHS suit to proceed would mean that the same witnesses will be deposed and the same documents will be requested in discovery, causing repetitious litigation, judicial waste, and a severe imposition on the doctrine's intended benefits of "avoidance of duplication" and "reduction of unnecessary burdens of time and expenses." N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 115 (2011) (quoting Olivieri, supra, 186 N.J. at 522).

14                                                    A-4443-14T4

Therefore, the legal requirements for the application of collateral estoppel have been met and the equities weigh in favor of its application.

IV.

The purpose of the entire controversy doctrine is threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

Codifying the entire controversy doctrine, Rule 4:30A states, "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine. . . ." It is "a remedy of last resort." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 244 (App. Div.) (quoting Vision Mortg. Corp. v. Chiapperini, 156 N.J. 580, 584 (1999)), certif. denied, 175 N.J. 170 (2002). A subsequent claim will be barred by the entire controversy doctrine "only when a prior action based on the same transactional facts has been tried to judgment or settled," Allstate N.J. Ins. Co. v. Cherry Hill Pain & Rehab. Inst., 389 N.J. Super. 130, 140 (App. Div.

15

2006) (citation omitted), <u>certif. denied</u>, 190 <u>N.J.</u> 254 (2007), unless the claim was "either unknown, unarisen or unaccrued at the time of the original action," <u>K-Land Corp. No. 28 v. Landis Sewerage Auth.</u>, 173 <u>N.J.</u> 59, 72 (2002) (citation omitted).

It is undisputed that the claims in the AHS suit involve the same transactional facts as in the <u>Rodriguez</u> action. AHS argues, however, that the entire controversy doctrine does not apply because its claims did not accrue until the <u>Rodriguez</u> court held defendants liable for Ms. Rodriguez's damages under the lease. This argument lacks merit. Although varying slightly in nature, the claims asserted in the instant suit seek indemnification and reimbursement of attorneys' fees and costs.

Although a defendant's indemnification claim "begins to accrue when the plaintiff recovers a judgment against it[,] [u]nder the entire controversy doctrine, if those claims are known, they should be asserted in the original action." <u>Mettinger v. Globe Slicing Mach. Co.</u>, 153 <u>N.J.</u> 371, 387 (1998), (citation omitted). In fact, <u>Rule</u> 4:7-5, which governs cross-claims, was specifically amended in 1979 "to require defendants to assert any cross-claims for . . . indemnity which they may have against any other party in the action itself despite the fact that the cause of action for . . . indemnity does not technically accrue until payment of the judgment by that defendant." <u>Buck v. MacDonald</u>, 300 <u>N.J.</u>

16

Super. 158, 161 (App. Div. 1997) (quoting Pressler, Current N.J. Court Rules, comment 2 on R. 4:7-5 (1997)). The fact that AHS pled its cross-claims for indemnification in the Rodriquez action firmly establishes its knowledge of the factual and legal basis for these claims during that litigation, rendering them subject to the entire controversy doctrine.

We acknowledge that a plaintiff whose claim is barred "must have had a fair and reasonable opportunity to have fully litigated her claim in the prior action." Oliver v. Ambrose, 152 N.J. 383, 396 (1998). However, the dismissal of an action without prejudice does not preclude the application of the doctrine. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 333 (1995). "In certain circumstances, . . . the principles underlying the entire controversy doctrine may mandate that a suit be barred even though it stems from the dismissal of a prior action without prejudice." Ibid. The subsequent action may be barred where a plaintiff (1) "manipulates the judicial system in order to fragment litigation"; (2) "has failed to avail himself of opportunities to pursue his remedies in the first proceeding"; and (3) "has deliberately flouted orders of the court." Ibid. (quoting Restatement (Second) of Judgments § 19 comment a (1982)).

As we have noted, AHS failed to avail itself of opportunities to pursue its remedies in the Rodriquez action by failing to file

motions for clarification or reconsideration and by failing to seek a direct appeal. Filing a new suit rather than pursuing those remedies runs counter to the general rule that "requires . . . errors underlying a judgment be corrected on appeal or other available proceedings to modify the judgment or to set it aside, and not made the basis for a second action on the same claim." Restatement (Second) of Judgments § 19 comment a (1982).

Because the entire controversy doctrine is equitable in nature, we must consider whether its application "would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy and efficiency." K-Land Corp., supra, 173 N.J. at 70 (quoting Pressler, Current N.J. Court Rules, comments 1 & 2 on R. 4:30A (2002)).

Barring any subsequent suit forecloses the adjudication of a claim asserted by a party. In considering party fairness, we do not merely consider the merits of AHS's claims; we must consider the fairness to all parties within the circumstances of the case. Nothing in the record suggests that defendants engaged in any strategy designed to deprive AHS of a full and fair adjudication of its indemnification claims. AHS had only to file a motion that

mirrored the ones filed by defendants in the _Rodriquez_ action to preserve their claims. It elected not to do so or to appeal but, rather, to pursue those claims in a separate action in a separate county, a choice not inconsistent with forum shopping. To permit AHS to pursue its claims in a separate action filed well after the time for appeal had expired would seriously undermine the doctrine's objectives of promoting conclusive determinations, judicial economy and efficiency, especially in light of the fact that it took over two years to resolve the _Rodriquez_ action.

Our consideration of the facts and equitable factors leads us to the conclusion that the entire controversy doctrine would properly apply here, supporting the dismissal of AHS's complaint with prejudice. Thus, the dismissal of AHS's complaint was warranted under either the application of collateral estoppel or the entire controversy doctrine.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

19                                                         A-4443-14T4